Carr, J.
Many objections to the decree, were urged in -the argument.
The first was, that Smith did not shew himself possessed of the equitable claim of Sims, upon Morgan: because, 1. he had not proved himself a creditor of Sims, since the evidence of Lee was secondary, speaking of a suit on a bond assigned by Sims to Smith, of which suit there must be a record, which being the highest evidence, was alone admissible : but, 2. if Smith had been a creditor in 1800, this debt must be presumed to have been paid before 1821, when he elected to take the land : or if not, 3. after such a lapse of time, and especially the death of the trustees, he had no right to take the land, nor'had the heirs of the surviving trustee any power to make a deed to him, the confi *247 dence as to that being personal: and 4. their deed was utterly ineffectual, both because there was adverse possession, and it was a contract for a pretensed title. It was denied on the other side, that there was weight in these objections : hut the answer to them mainly relied on, was, that they were points, not one of which had been decided by the chancellor; that, when he directed the heirs of Sims to be made parties, he meant to give them an opportunity to contest the claim against their ancestor, on every ground which might avail them, and of course, could not intend to forestall them, by deciding any point of their case in their absence ; that when they should appear and answer, if they admitted the claim of the plaintiff, there would need no further proof; if they contested it, the whole case, as to those parties, would be open; new evidence might be taken on either side ; and whether it was or not, the chancellor would decide upon the claim of Smith against Sims, as a part of the. case untouched before. I think there is great force in these remarks, and that they dispose, for the pn these objections, unless it be true, that the chancello: of directing new parties, ought at once, to have di; the bill, either for defect of proof of the claim again® or, because that claim was attempted to be satis taking a pretensed title, which the court was calle! assist.
As to the first, the language of the chancellor is, although the plaintiff may be permitted to assert this equity, to preserve it, yet his case was too defective, to entitle him to a final decree at that time.” I think the distinction here taken a very sound one. There may not be proof sufficient to establish a claim, nor exactly of that kind which is the best evidence the case will admit of; yet it may be such as to create a strong belief, and also to shew, that better and full evidence can be produced. In the case before us, the plaintiff had the deed of the heirs of the trustee, stating that he was a creditor of Sims; and he had the evidence of Lee, stating that he was a creditor: but, Lee adds, that he “ that. *248 no connection. had prosecuted a suit to judgment, on a bond assigned by Sims to Smith. The chancellor could not properly decide against the heirs of Sims, when they were not before him. But was not here enough to prevent him from dismissing the bill at once ? Did not this proof go pretty strongly to shew a debt from Sims to Smith, at the same time, that it pointed to a source (the record) from whence indubitable evidence could be obtained ? And was it not likely to be most conducive to equity, to call those before the court, who could properly discuss this matter, and at the same time, give opportunity to the plaintiff to produce this record-evidence, if the heirs of Sims should dispute his claim ? I think so. It was an equity, with which the defendants had
Neither can I see, that the taking this deed from the heirs,of- Sims’s trustee, was a transaction within the letter odie spirit of the statute against buying and selling pretensed titles.. That law, as I have always understood it, means buying and selling legal, not equitable titles. In Wood v. Griffith, 1 Swanst. 43. lord Eldon says, “ It is extremely clear, that an equitable interest, under a contract of purchase, may be the subject of saleand after some further remarks, he adds, “ If I were to suffer this doctrine to be shaken, by any reference to the law of champerty or maintenance, I should violate the established habits of this court.” In our case, Sims’s original purchase from Morgan, was in 1797, before there was any adverse possession : but he did not get the legal title : he conveyed this equity in trust to pay his debts; and the plaintiff, a creditor, takes the deed from the heirs of the trustee, in order to carry into effect, the deed of his debtor, and obtain payment of his debt. Whether this effort be successful or not, there was surely nothing criminal in it.
The counsel for the appellants also objected, that, though there was no doubt of a contract for the land between Sims and Morgan, yet there is not such evidence of it, as equity will deem sufficient on a bill for specific execution: for Sims *249 never had possession of the land; neither is there any such written evidence of the contract, as discloses the terms; the contents of the title bond are not proved; and the receipt, though it acknowledges 18,000 dollars paid in Morris and Nicholson’s notes, in part payment for 100,000 acres of land in Randolph, does not give u,s the particulars of the contract: that thus we do not know what was the price to be given: that the depositions of Armistead and Summerton merely state their belief, that all the purchase money was paid, which is not full proof, and if it were, payment is not such part performance, as will authorise a decree for specific execution. There is no doubt with me, that Armistead sold this land for Morgan to Sims; and I think we may fairly conclude from the evidence, that full payuuyft been made. Armistead swears, “ that Morgan pumriS^ijs possession, a title bond for a conveyance of the land | and the patent, both to be delivered by him to Sims, jIV virtue of that contract.” What lie did with them, ho does \|ot’say.j It is probable, that be delivered them to Sims; and tlfo^sub sequent insolvency of Sims, together with bis death, and that of both bis trustees, and the lapse of so many years, may well support the assertion in the bill, that the bond is lost. I do not say, that these circumstances are such, as clearly to authorise equity to decree a specific execution, if the heirs of Morgan were resisting it: but 1 do say, confidently, that, when the residuary devisee of Morgan, (Mrs. Neville) having the sole right under him, releases all that right to the plaintiff as representing Sims, and thereby acknowledges the contract, and satisfaction for it, equity will feel itself fully authorised, so far as Morgan’s right is concerned, to decree in favour of the plaintiff. It was said, that this deed oí Mrs. Neville could have no operation whatever, both because she had before passed the legal right to the defendants, and because of their adversary possession. Whether Mrs. Neville, who was then a feme covert, was privily examined in the execution of .the deed to the defendants, we do not know, as the defendants, though they refer *250 to this deed in their answer, have' not filed it. But, however this may be, and however inoperative the deed of Mrs. Neville may be in the way of conveying title to the plaintiff, it would certainly be conclusive against her, to shew that she admitted the contract between Morgan and Sims, and was willing to do all she could in execution of it.
It was also objected, that the chancellor erred in deciding that the marshal’s deed was not effectual to pass the title. The counsel admitted the general rule, that he who claims under one of these sales, founded on a forfeiture, must shew that the law had been strictly pursued; and that such titles, where (as in this case) 100,000 acres of land are bought for 54 dollars (the mere tax due on it) ought not to be encouraged : but yet he insisted, that the same presumptions from length of time, which govern other cases, would apply here also; and that, the defendants having been in possession under'the sale for twenty years, it ought to be presumed, that every pre-requisite of the law had been complied with. It has been decided-, in several cases, both in the federal court and in this, that an officer, who acts under a naked power, especially if by the exercise of that power the rights and property of others may be lost, must pursue his authority to the very letter, and that those claiming under his acts- must shew this, as nothing will be presumed. In Williams v. Peyton, the deed of the marshal made under this very act of congress, was decided not even to furnish primd facie evidence, that the advertisements Sic. required by the law, had been set up in the country, and published in the papers; and from the manner in which the question is treated there, it seems clear to me, that the court would have permitted no other presumption, than such as would be received as to any other link in the chain of title to real property, The chief justice, who delivered the opinion, says, “ It is a general principle, that the party who sets up a title must furnish the evidence necessary to support it. ' If the validity of a deed depends on an act in pais, the party claiming under that deed is as much bound to prove the perform *251 ance of the act, as he would be bound to prove any matter of record on which its validity might depend. It forms a part of his title; it is a link in the chain which is to its continuity, and which it is incumbent on him to preserve. These facts should be examined by him before he becomes a purchaser, and the evidence of them should be preserved as a necessary muniment of title.” He then goes on to shew, that these general principles apply, with peculiar force, to the marshal’s proceeding to sell lands under the law of congress for non-payment of taxes; where the officer’s duties are clearly pointed out, and his compliance with them easy of proof, and where, for the opposite party to prove that they had not been complied with, would be always difficult, often impossible. Now, if the validity of the marshal’s deed depends on these acts in pais (the publishing advertisements of the sale in the gazette, and setting them up in public places); if the party claiming under such deed, is as much bound to prove their performance, as he would be to prove any matter of record, on which the validity of the deed might depend: how can it be supposed, that he would be permitted to supply evidence of these acts, by presumption from time, sooner than he might supply the want of the deed itself, by such evidence? The very nature of such titles, it seems to me, ought to warn the purchasers, to see that all the pre-requisites of the law are complied with ad unguem. They buy often large and valuable tracts of land for a mere trifle; and they ought always to expect, that the owner will attempt to recover them. This is notice, intrinsic in the transaction, that they must be ready for defence; and they ought, at once, to collect the proper evidences of compliance with the law; and these documents, being written, can be just as easily preserved as their deed. My opinion, then, is, that the time which has elapsed, did not release the appellants from the necessity of strict proof; and that, failing altogether in producing it, the chancellor was right in saying, that the marshal’s deed did not help their case at alb
*252 He was equally correct, I think, in saying that the deed from Mr. and Mrs. Neville (even if she was privily examined), did not give the appellants the position of purchasers without notice, against the plaintiff; because nothing was paid by them, and it was in their option, at any time, to re-convey.
With respect to the order of account made by the chancellor, I think it neither incorrect nor premature. Its object was to ascertain, for the benefit of the defendants, principally, the amount of taxes they have paid, and the value of their improvements, as well as the rents and profits. It cannot, therefore, be said to disturb them ; for it is not probable, that a step will be taken in it, unless at their instance; and if the plaintiff should unnecessarily be the means of incurring costs in the case, the chancellor will have it in his power to make him pay all such costs, however he may decide the cause.
Upon every ground, therefore, I am for affirming tire decree.