Cake, J.
This case has been well argued; and agreeing as I do in the general views of my brother Tucker, I shall be very brief in touching some of the outlines of the case. I think the court has jurisdiction, because Prior had no legal estate in the moiety of the ten acres, but an equity only: and further, because, if he once had the legal estate, it was divested by his oath of insolvency, and vested by the law in the sheriff of *737 Kanawha, where the land lay. It seems to have been the idea, that the deed of the insolvent conveyed his property ; but this is a clear mistake. By the express words of the act, the estate of the insolvent, not only that contained in the schedule, but “any other estate which may be discovered to belong to the prisoner, shall be vested in the sheriff of the county wherein such lands, tenements, goods and chattels shall lie or be foundand this has been the positive law ever since the year 1769, 8 Hen. stat. at large p. 326. Whereas the law requiring the prisoner to deliver up the personal and convey the real estate, was first enacted in .1.799; though not as repealing the other, for they both stand together in the law to the present day. Lewis, then, and Summers, the purchasers under the sale of the sheriff of Mason, acquired no title to the land: it was vested in the sheriff of Kanawha, for the benefit of Edgar the creditor at whose suit Prior was in execution. And the most serious objection I have encountered in this suit, is the fact that the sheriff'of Kanawha was not made a party; a fact which would have had much weight with me, but for what has happened in the court below. There, when the objection was taken, and the court gave leave to amend the bill by making the sheriff a party, it was acknowledged by the defendants that he was dead, aud the necessity of making his representatives parties was expressly waived. Taking this into consideration, and further, that the sheriff is a mere trustee for the benefit of the creditor, and that creditor a plaintiff in the bill praying the aid of the court, I do not think the objection should avail to reverse the decree. It may be further said, thaL this is a suit for the legal title, and also for partition. I am satisfied, both on the subject of parties and jurisdiction. I do not think this a case either of maintenance or pretensed title. It is the case of creditors scuffling for their money, and the debtor willing to help them, by *738 suffering them to aid in the recovery of his, right, not for their profit in the way of speculation, but so far as .the payment of their- just debts may go. In this view it is like the case of Allen &c. v. Smith, 1 Leigh 231. and ^ cage tjjere cpe(]; and also the case of Hartley v. Russell, 2 Sim. & Stu. 244. 1 Cond. Eng. Ch. Rep. 439.
I think, however, the accounts have been taken wrong. The Ruffners must be treated as tenants in common with Prior; not as trespassers. They are liable for a fair share of the profits, and entitled to full compensation for their expenses fairly and reasonably incurred, as well those attending their abortive efforts to find water, as their more fortunate ones.
Tucker, P.
The first question in this case is as to the jurisdiction of the court; and that, I think, is easily disposed of. When Prior took the insolvent debtor’s oath in 1813, his deed for the land in question not only operated nothing, because it was without a sufficient consideration to raise an use and to give effect to a bargain and sale, and because the sheriff of Mason had no right to receive such a deed, but the land itself immediately vested, without deed, in the sheriff of Kanawha county, within which the land lay. 1 Rev. Code, ch. 134. § 34. p. 538. Shirley v. Long, 6 Rand. 735. The consequence was, that Prior's legal title was divested, that the beneficial interest or equitable right to the es.tate was in Edgar the creditor, to, the amount of his demand, and in Prior for the residue. Thus circum.stanced, it was impossible for Edgar or Prior to maintain, an ejectment in their own names. The action indeed might have been brought in the name of the sheriff, if he was alive at the institution of this suit. But if, by analogy to the case of an ordinary trustee and cestui que trust, we even suppose that the creditor and debtor could control and direct this trustee (not a trustee of their own creation, but the creature of the law) *739 yet it would not follow that the cestuis que trust would not have a right to assert their claim in a court of equity. Before the recent act of assembly passed in 1821, even an assignee, and much more a transferree, of a bond might sue in equity, though there was no doubt he might use the obligee’s name and sue also at law. 6 Munf. 23. In the case of a cestui que trust of lands, I am not aware of any case which has deprived him of his right to sue in a court of equity, merely because an action might be maintained by his trustee at law. I am therefore of opinion that the court had jurisdiction, even if the sheriff of Kanawha had been living, which does not appear. As to the obligation on those interested, to hunt up his heirs and sue in their names, and encounter all the embarrassments incident to such a proceeding, it could not surely be insisted on by a court which considers itself the peculiar protector of the rights of the cestui que trust. That court will not turn him from its doors upon such pretences, or involve him in embarrassing litigation to avoid giving him relief.
Under this view of the case, it is true, the sheriff or his heirs should in strictness be parties, but the necessity of making them so was expressly waived, as appears by the decree.
But this is not all. Prior, in my opinion, never had the legal title. The deed of bargain and sale was made to him after the legal title had been passed awa.y by the deed of trust to Graham,: and though that deed was defeated and avoided by the payment in June 1805, before the day of payment arrived, yet between its date and the performance of the condition, the foe was in Graham. For where an estate in fee is conveyed upon condition, so complete is the title of the feoffee or bargainee, that his wife is entitled to dower, though that right will be defeated by entry upon the performance of the condition. 1 Cruise’s Dig. 192. 2 Id. 42. Graham therefore had the feo, and the bargain and sale could only *740 operate as a contract, and of course gave but the equitable title.
Believing, from these views of the case, that there is no reasonable doubt of the jurisdiction, I proceed to consider next whether this is a case of maintenance, which is not entitled to the countenance of this court. In support of this position the case of Allen v. Taylor, decided in the court of appeals at Richmond, has been cited, and the case of Morrison v. Campbell &c. 2 Rand. 206.
I am ready to admit that equity will not enforce an equitable title, purchased by a party under circumstances which, if it were a legal title, would subject him to the penalties of the act against buying and selling a pretensed title; which was the position taken by judge Brooke in Allen &c. v. Smith, 1 Leigh 254. But with this admission I think it perfectly consistent to say that, as a general principle, the act does not apply to every sale and purchase of equitable rights. Such was the decision in that case; and in the case of Wood v. Griffith, 1 Swanst. 43. lord Eldon saj's, “It is extremely clear, lhat an equitable interest under a contract of purchase may be the subject of sale. If I were to suffer the doctrine to be shaken by any reference to the law of champerty, I should violate the established habits of the court.” I do not rest this case, however, upon this general doctrine; for I am free to acknowledge that if Andrew Lewis had, before Prior’s insolvency, purchased of Prior his right, whether it be legal or equitable, while the Ruffners were in possession claiming title whether legal or equitable, this court would not countenance the transaction. That, if I mistake not, was the precise case of Allen v. Taylor. Taylor, there, of his own mere motion, intruded himself, by a voluntary purchase, into the contest between the other parties. But Andrew Lewis, in this case, does not stand before the court in the light of a party who, without other motive *741 than the desire of an advantageous speculation, meddles in the feud of others. He stands, as does Edgar also, in the favoured light of a creditor, who is held to be justified in gathering up the wreck of his debtor’s propcrty, to save himself from sinking. It is with him the tabula in naufragio, and he is justified in seizing it. This distinction is recognized and acted upon by the decision in Allen &c. v. Smith, and also in the case of Hartley v. Russell, 2 Sim. & Stu. 244. 1 Cond. Eng. Ch. Rep. 439. That was a case where a creditor, who had sued his debtor, agreed to abandon his suit on the debtor’s giving him a lien on securities in the hands of another creditor, with authority to sue that creditor; and the creditor agreed to use his best endeavours to recover the securities. The court held that the agreement did not amount to champerty, as there was no stipulation that the creditor was to have the profits to be derived by the debtor from the suit. He was only to receive payment of his debt. So here, Andrew Lewis by the terms of his contract is to pay over to Prior the excess after discharging the debt. He is in fact an incumbrancer only, not a purchaser; and I am not aware that a bona fide creditor cannot take a lien on the equitable estate of his debtor, notwithstanding an adverse claim.
We have, however, stronger authority for this doctrine than the decided cases. We have the act of assembly. If this be champerty, the statute commits the first act of champerty. It provides that where an insolvent debtor takes the oath of insolvency, the estate contained in his schedule, with any other estate which may be discovered to belong to him, for such interest therein as such prisoner hath, and may lawfully depart withal, shall be vested in the sheriff. No one has ever supposed that a debtor, who had a good title to a tract of land which was in the adverse possession of another, was absolved from surrendering it in his schedule, or that it was not vested in the sheriff. The pretensed title, if such it be, *742 therefore passes it/ the law itself to the sheriff, and he is r , . • . . moreover required to set it up and sell it to the highest bidder; so that here was an express authority to the sheriff of Kanawha to sell, and to any person to purtbis supposed pretensed title. And why? Because the insolvent debtor being ruined, and his creditors likely to suffer, the law deemed it proper to provide for the disposition of the wreck of his estate for their benefit. And if the purchase of Andrew Lewis at a sheriff’s sale would not have been champerty, by what reason shall it be so adjudged, when, the sheriff being dead, the debtor, with the assent of his creditor, transfers the property, not in absolute ownership, but only as a security for his debts, vesting in one of his creditors the power of prosecuting the demand, as was done in the case already cited of Hartley v. Russell? I cannot, for my own part, conceive; and am therefore of opinion that the transaction is unassailable.
It has been earnestly objected, that on Lewis’s death, his heirs and not his executors should have been made parties. I think not. The question of title was settled as long ago as 1829, and in 1830 a decree was rendered, confirming the partition made under the former order, and decreeing a conveyance. The cause then proceeded for the rents and profits only, to which the executors were entitled; and they were therefore the proper parties. The act of assembly authorized the revival on motion, and the court having ordered the revival, we must presume the motion to have been made. If the parties in whose name the revival was made were not executors, the defendants could have had no difficulty in contesting the fact.
Thus far the case seems to me altogether in favour of the complainants. For the residue, it is in various respects decidedly against them. I have no doubt that in this case the account, as taken under the orders of the court, does the defendants great injustice.
*743 First, as to rents and profits : I have no question that in the settlement of them, the Rujfners ought to be treated as tenants in common with Prior and those claiming under him. They claim to hold Reynolds’s interest at a very early period, by contract with him; and therefore held in his right one moiety, while they wrongfully took the exclusive enjoyment and possession of the other moiety, which did not belong to them.
Out of this relation grows, I think, the principle that they ought not to be charged with rents or profits where none have been made (provided they appear to have employed the property in good faith with a view to make it profitable, but have failed in doing so) nor with speculative profits, where the real profits are susceptible of being ascertained. I am not aware, however, that this relation would have prevented the operation of the statute of limitations, had it been pleaded. But as it was neither pleaded, nor relied on before the commissioner, it must be taken to be out of the case. The party might have pleaded the statute to the bill, or upon the account be might have insisted up on it before the commissioner. For if the defence is set up before the commissioner, the answer to that defence may also be produced. But if the objection be permitted to be made by way of exception only in court, it cannot be properly answered there.
Secondly, as to improvements: 1 am clearly of opinion that the defendants were not only fairly entitled to a credit for their expenses and actual services (not their invention and talent in contriving the machinery &c.) in the successful operation which terminated in rendering the property of great value, but also for their expenses, labour and services in their unsuccessful experiments. The plaintiffs, if they will have advantage from their successes, must be content to share in their disappointments and failures. He who takes the profit must share the burden. Their works were prose *744 cuted under the impression that the property was their own. Their bona fides, therefore, cannot be doubted. ,They cannot be suspected of reckless expenditure, or' of wild and extravagant adventures. They appear to been as prudent and sagacious, as zealous and persevering. The plaintiffs are now to have the benefit of the labours of their lives, the fruits of their sagacity, and the harvest of their untiring energy and perseverance. They cannot therefore reasonably object to share in their outlay. For many a sleepless night and anxious day the defendants must still expect to go unpaid, for these admit not of estimate. But what they have expended in the bona fide pursuit of their great and meritorious object, ought to be unstintingly repaid. In taking this account, the expenditure of each year should be offsetted against the rents and profits; and thus we may approximate, at least, to justice between the parties. For thus, whether the act of limitations be or be not relied upon, the claim for improvements in any year will be liquidated, in whole or in part, by the rents and profits of that or'any succeeding year. It remains only to add, that the commissioner has given credit to the Rvffners for the expense of certain permanent improvements,—sinking a gum, boring the rock, tubing it, and reaming: but he has given them no credit for the furnaces and machinery necessary for making salt. These fixtures, as well as the others, were made at the expense of the Ruffhers. It should be ascertained what they were worth at the time partition was made under the decree, and the Ruffners should have credit for one moiety thereof.
Brockenbrough and Cabell, J. concurred in the opinion of the president.
Decree reversed, and cause remanded for further proceedings.