## HUTCHINGS & ALS.

*v.*

## GILMER & ALS.

*(Supreme Court of Appeals of Virginia, November, 1882.)*

[Virginia Law Journal, 1883, p. 104.]

### Powers Given by Law—Must Be Strictly Pursued—Duty of Persons Claiming under.

Where a naked power is given by law to an officer or other person, that power must be strictly pursued, especially if by the exercise of that power, the estates or rights of others may be forfeited or lost; and it will devolve on him who claims a right, under the exercise of such power, to show that it was in all respects pursued.

### Same—Same—Same—Application to Tax Titles—Effect of Sec. 23, Ch. 37, Code 1860.

The above principle, in its application to tax titles, was not affected by the provision contained in § 23, ch. 37 of the Code of 1860, except that since that enactment the irregularities must appear on the face of the proceedings. No change was made in the nature or degree of the irregularity in the proceedings, but only in the evidence required of its existence. The effect of the statute was to shift the *onus probandi*; and whereas, before it was incumbent on the claimant under a tax title to prove affirmatively that all the requirements of law had been complied with, it is now necessary for those claiming against the tax title, to show irregularities apparent on the face of the proceedings.

### Tax Sales—Irregularities Shown—Effect upon Purchaser's Deed.

A case in which such irregularities were clearly shown, and the deed of a purchaser of land at a tax sale, annulled.

### Same—Failure to Show List of Delinquent Lands Was Examined—Effect.

The failure to show that the list of delinquent lands was examined by the county or corporation court, or the judge thereof in vacation, constitutes a fatal defect in the title.

**Same—Purchaser Not in Possession—Court of Equity Has Jurisdiction to Test Title of.**

The purchaser at the tax sale, not being in possession of the land, a court of equity has jurisdiction to test the validity of his title thereto, and the power to remove any cloud put on the title by the proceedings to sell and convey to him.

The facts are fully stated in the opinion of the court.

*Kean, & Davis* and *J. P. Harrison*, for the appellants.

*Ould & Carrington* and *W. W. Gordon*, for the appellees.

CHRISTIAN, J., delivered the opinion of the court.

This case is before us upon an appeal from the decree of the corporation court of the town of Danville. A brief statement of the pleadings and facts proved in the case are necessary to show the questions of law which this court is now called upon to decide. The bill was filed in the circuit court of Pittsylvania county, and the case was afterwards transferred to the corporation court of the town of Danville. The bill alleges that the complainants, John Gilmer and Charles E. Dabney, on the 24th of June, 1878, purchased from William Powell a large tract of land lying in Pittsylvania county, known as the Smyth Mountain tract, containing between four and five thousand acres. That the said tract of land was conveyed to them by said Powell by deed, in which Mary Jane, his wife, joined, and which deed was duly recorded (an exhibit filed with the bill showed the due recordation of the deed in the clerk's office, where, by law, it was required to be recorded). The said tract of land had previously been purchased by said Powell from John R. Thurman and S. Griffin, commissioners of the circuit court of Bedford county, in the suit of Geo. G. Saunders, administrator, against Saunders' heirs, and was, on the 1st day of October, 1877, conveyed to said Powell by John R. Thur-

man, commissioner, under decree in said suit, by deed which was subsequently recorded. That the said Geo. G. Saunders, to administer whose estate the suit was brought, derived the said land from the heirs at law of Thomas R. Claytor, who were Edward M. Claytor and Samuel G. Claytor; that is to say, one moiety from Edward M. Claytor, by deed dated the 24th of January, 1871, which was subsequently duly recorded; and the moiety belonging to Samuel G. Claytor from John R. Thurman, commissioner, under the decree of the county court of Bedford, in the suit styled Geo. G. Saunders against Samuel G. Claytor and others, by deed dated the 4th day of April, 1877, and duly recorded. The original deed from Commissioner Thurman to Powell, and the original deed from Commissioner Thurman to Geo. G. Saunders are filed as exhibits with the bill.

The bill further alleges, that the said Thomas R. Claytor derived land from one David Doyle by deed dated the 9th of March, 1811, which was duly recorded, and an authenticated copy filed with the bill.

The bill further alleges, that the land in controversy was originally patented by one Richard Smyth, by patent dated the 30th of April, 1802, an authenticated copy of which was filed with the bill. That the said Smyth having died intestate, and his land having become escheatable to the commonwealth, all the commonwealth's rights therein were released to the said David Doyle by a special act of the general assembly passed 5th of February, 1810, a copy of which is filed with the bill.

The bill further charges, that the said Doyle took possession of the said land under this said special act, and held it until his conveyance thereof to the said Thomas R. Claytor, who thereupon received and held possession thereof until his death, when it descended to his heirs at law, Edward M., and Samuel G. Claytor, and then the possession thereof

1 Va Dec—32

became vested in George G. Saunders, by virtue of the deeds aforesaid to him, and that upon his death it descended to his heirs at law under the deed made aforesaid to Wm. Powell, the immediate grantor of the complainants.

The complainants, therefore, charged that they have derived an unbroken chain of said land from the commonwealth, and an equally continuous possession under and by virtue of the special act and deed heretofore mentioned.

The bill further charges, that about the first of January, 1878, the defendants, Jos. D. Blair, John M. Hutchings and Berkley Ward, claimed the larger portion of said land under a pretended deed from H. P. Jones, clerk of the Pittsylvania county court, dated the first of April, 1876, and undertook to put in possession of a small portion of said land a certain Sam Leftwich as their tenant, who held possession thereof as such tenant until he was dispossessed thereof as such tenant by the sheriff of the county under a writ of possession issued on a judgment of the county court, in an action of unlawful entry and detainer, entered at its December term, 1878.   Copies of this judgment and writ of possession were filed with the bill.

The bill further charges, that the defendants, Blair, Ward and Hutchings, had not otherwise entered upon or disturbed the possession of the said land in the hands of the complainants, or those under whom they claimed, and that they (the complainants) are in complete possession of the whole of said tract of land, having rented the same to said Samuel Leftwich by a sealed agreement filed with the bill.

They charge that the sole claim set up by the defendants to the said land rests on the following basis, to wit:   That the said land was included in a list of lands which they claim to have been advertised by Joseph D. Blair, the then treasurer of Pittsylvania county, to be sold as delinquent for the non-payment of taxes thereon for the years 1865, 1866, 1867,

1868, 1869, 1870 and 1871. Said sale to take place on the
1st day of the December term of the county court of Pittsyl-
vania, for the year 1873 ; that on said day the land was sold at
public auction by said Treasurer Blair to the defendant, John
M. Hutchings, for the sum of $16.49, which amount includes
the principal and interest, and proportion of cost of sale
which said land was to bear ; that the said treasurer subse-
quently included the said land in his lists of sales, and
returned them to the county court ; that by the said county
court they were ordered to be certified to the auditor of
public accounts ; that after the expiration of two years from
said sale, and after having the said land surveyed, and the
survey recorded, the said Hutchings, on the first of April,
1876, procured a deed to be executed to him by H. P. Jones,
clerk of Pittsylvania county court, a copy of which pretended
deed is the paper marked "H. H.," and filed herewith.

They further charge, that the land in question, as it is
claimed by the defendants under the pretended deed to
Hutchings, was never advertised for sale according to the
requirements of chap. 38, sec. 7, of Code of 1873, and that
no tract of land belonging to Thomas R. Claytor, and contain-
ing 4,000 acres, was ever advertised by the said treasurer at
any time for sale for the non-payment of taxes thereon.
They alleged various irregularities in the advertisement of
sale, and of the amount of various delinquent taxes for cer-
tain years from 1865 to 1871, and aver that the land in con-
troversy was not pretended to be delinquent for any year
prior to the year 1869, and aver that the only possible delin-
quency was for the year 1870.

The bill, after making Hutchings, Blair and Ward parties
defendant, prays that the deed executed by H. P. Jones,
clerk of Pittsylvania county court, to the defendant Hutch-
ings, on the 1st day of April, 1876, be vacated and annulled,
and that the complainants be decreed a redemption of said

land, and that the court may, by its decree, completely remove all cloud from the title of complainants to the land in controversy.

This bill was answered by the defendants, Hutchings, Ward and Blair, and they also demurred to the bill.

In their answer, they deny that George G. Saunders ever became the owner of the legal title to said land, and that the deed from Commissioner Thurman was wholly ineffectual to convey the said land or a moiety thereof, because, as the answer avers, long before the execution of said deed the land in controversy had been sold for delinquent taxes, the title thereto had been forfeited, and the title and right thereto, as well as the possession thereof, had been fully vested in the defendants. They refer at length to the proceedings in the circuit court of Bedford, and in the county court of Bedford, and deny that these proceedings conferred any title upon the complainants.

They allege that their title is based as follows : The said lands were returned delinquent for state taxes for 1869, 1870 and 1871, and for such delinquency were certified to the auditor of public accounts ; that in September, 1873, the auditor, acting in pursuance of act of 2d April, 1873, sent a circular letter, herewith filed and marked D K T, ordering the sale of all lands delinquent for taxes for 1865, 1866, 1867, 1868, 1869, 1870 and 1871 ; that according to the said law and letter, the treasurer of Pittsylvania county, after due and proper advertisement of the lands delinquent in his county, proceeded to sell the same, in strict compliance with the law, on the 1st day of December county court, 1873 ; that on that day the defendant, John M. Hutchings, became the purchaser of the tract in this bill mentioned ; that he paid for it, and has paid all taxes, costs of survey, and other charges, in order to perfect his title thereto ; that the said sale was properly and legally reported by the said treasurer,

as hereinbefore explained and set forth, and that all the requirements of the law were fully and satisfactorily complied with in all its various aspects as to the said sale, etc. ; that after two years had passed, and no offer was made to redeem the said land, the said Hutchings had the land surveyed, and after complying with all the requirements of the law, obtained a deed thereto from H. P. Jones, clerk of Pittsylvania county court.

The respondents insist that their title to and possession of said land are full and perfect, and were so full and perfect long before the suit was brought or the complainants had made any claim to said land.

Upon this bill and answer and depositions filed, the court below entered its decree annulling and setting aside the deed executed by H. P. Jones, clerk of Pittsylvania county court, to the defendant Hutchings, and also the deed executed by Hutchings to the defendants Blair and Ward, upon the ground of irregularities apparent upon the face of the proceedings under which said deed purporting to convey the title to said tract of land was executed.

To this decree an appeal was allowed by one of the judges of this court.

The record presents the question of a comparison of titles between the purchaser at a judicial sale and the purchaser under a sale for delinquent taxes.

The court below held that the tax title under which the defendants claimed was defective because of irregularities apparent on the face of the proceedings, and that the deed from the clerk of Pittsylvania county be annulled and set aside.

The court is of opinion that there is no error in this decree.

Before the statutes of 1809, 1814 and 1831, all of which have been substantially incorporated in the Code of 1860 and in the present Code, it was firmly established by numerous

decisions of this court and of the Supreme Court of the United States, that a purchaser at a sale for delinquent taxes, in order to maintain his title, must prove affirmatively that all the requirements of the law have been fully complied with. All the authorities declared that statutory directions which are imperative must be strictly complied with, and no principle seemed more firmly fixed by judicial authority, as well as by the common principles of justice and reason, than that where there is a summary proceeding affecting the rights of property in which extraordinary power is exercised concerning such rights of property, the course of proceeding directed by the statute must be strictly followed. Blackwell on Tax Titles, chap. 17, pp. 300–337 ; 5 Gratt. 120 ; 14 Howard 78 ; 18 Howard 69 ; 13 Wallace 506 ; Allen v. Smith, 1 Leigh 231 ; 4 Crouch 403 ; 4 Rand. 509. In the last-named case, Nalls v. Fenwick, 4 Rand. 509, the court said : "As a general proposition it will scarcely be controverted that where a naked power is given by law to an officer or other person, that power must be strictly pursued ; especially if by the exercise of that power the estates or rights of others may be forfeited and lost ; and it will devolve on him who claims a right, under the exercise of such power, to show that it was in all respects exactly pursued."

In consequence of the application of these principles to the sale of land for the non-payment of taxes, it had become extremely difficult to maintain a title claimed under such a sale, it being incumbent on the claimant to prove, at any distance of time short of that which would give him a title under the act of limitations, that every prerequisite to the exercise of the power of sale was strictly complied with, even though such prerequisite were a mere act *in pais.*

To prevent inconvenience and occasional injustice, provisions were made in the acts above referred to, and which have been incorporated into our present Code. See Flanna-

gan v. Grimmet, 10 Gratt. 421, and Johnson v. Myers, Texas Law Journal, 1860, p. 50. These provisions are as follows (see Code 1860, ch. 37, § 23): "When the purchaser of any real estate so sold, his heirs or assigns, shall have obtained a deed therefor, according to the six preceding sections, and within six months from the date of such deed, shall have caused the same to be recorded in the court of the county or corporation in which such real estate shall lie, and such estate shall stand vested in the grantee in such deed as it was vested in the party assessed with the taxes (on account whereof the sale was made), at the commencement of the year for which the said taxes were assessed, notwithstanding any irregularity in the proceeding under which the said grantee claims title, unless such irregularity appear on the face of the proceedings."

This statute did not change the principles of law before referred to, as to irregularities in the proceedings, except to this extent, that such irregularities must appear on the face of the proceedings. No change was made in the nature or degree of irregularity, but only in the evidence required of its existence. The only change (certainly a very important one) which these provisions made in the former law, was that to invalidate the deed of a purchaser at a tax sale by reason of an irregularity in the proceedings, such irregularity must appear on the face of the proceedings.

The effect of the statute was simply to shift the *onus probandi*, and whereas before the statute it was incumbent on the claimant, under a tax title, to prove affirmatively that he had complied with all the requirements of the law, it is now made necessary for the claimant against the tax-bill to show irregularities apparent on the face of the proceedings.

We think this has been clearly shown by the record.

The law under which this land was returned delinquent for the years 1869, 1870 and 1871, is found in the 36th

chap. of the Code of 1860, secs. 14, 15, 17, 19 and 20, and declares that a sheriff or other collector shall make out a list of real estate delinquent for the non-payment of taxes thereon, which list shall be in the following form :

List of real estate in the county of ———, delinquent for the non-payment of taxes thereon for the year ———:

| Name of person. | Residence. | Estate held. | Quantity of land. | Description and local situation of land. | Distance and bearing from the court'se. | Amount of taxes. | Why ret'ed delinquent. |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | |

To this list the collecting officer shall subscribe the following oath :

"I, ——— ———, do swear, that the foregoing list is, I verily believe, correct and just ; that I have received no part of the taxes for which the real estate therein mentioned is returned delinquent ; and that I have used due diligence to find property within my county liable to distress for said taxes, but have found none."

The delinquent list returned for 1869 does not conform to any of the requirements of the statute. This is marked Exhibit No. 5. It only contains the name of the delinquent party and the number of acres assessed as delinquent. It is not made out in the form prescribed. The statute requires the name of the person, the residence, the estate held, the quantity of land, the description and local situation of the land, distance and bearing from the courthouse, amount of

taxes, and why returned delinquent, all to be specified, and none of these appear plainly, some of them not at all. There is no statement of "estate held," no "description of land," "distance and bearing from courthouse;" and the other requirements of the form appear only by inference.

The delinquent list for the years 1870 and 1871 seems to be correctly and regularly made out in due form, but as to these lists there is nothing to show that they were examined by the court or the judge thereof in vacation. This is a fatal defect. The law is peremptory that the list shall be examined by the court or the judge thereof in vacation. The collecting officer has no right to take the list unapproved by the certificate of the court or the judge thereof, and without such certificate to represent to the auditor that the land was delinquent. The auditor cannot treat the land as delinquent without the order of the court or the judge thereof in vacation. The owner of the land and the purchaser are entitled to the judgment of the judicial tribunal prescribed by law, approving, sanctioning and certifying to the correctness of the lists of delinquent lands returned, and to the propriety of the acts of the officers who make oath to it.

The absence in the record of this judicial determination by the court or the judge thereof in vacation, is fatally defective. And thus it appears that upon the face of the proceedings the claim of the appellants as purchasers of the tax-titles cannot be maintained.

. It appears further from the record that the tax for which the land was sold was thirteen dollars and nine cents, and the quantity of land sold for the payment of this tax was 4,000 acres. The statute above referred to declares "that the sale of tracts of land shall be of each tract separately, or of such quantity or part thereof as shall be sufficient to satisfy the taxes thereon, with interest and commissions, and its proportion of expense."

The sale of so large a tract of land for so trivial a sum, if not of itself sufficient to invalidate the sale (as to which we express no opinion), calls upon the court to scrutinize with the greatest care all the proceedings upon which the sale is founded.

As was said by Chief Justice Marshall in Stead's Ex'or *v*. Course, 4 Cranch 413, "The proceeding not being strictly regular, the sale ought to have been of so much of the land as would satisfy the tax in arrear   *   *   *   if the whole tract of land was sold when a small part of it would have been sufficient for the taxes, the collector unquestionably exceeded his authority."

It is further shown by the record that the appellee paid over to the clerk of the county court of Pittsylvania, in accordance with provisions of chap. 38, sec. 16, Code of 1873, the sum of one hundred and ninety-five dollars, it being the taxes, costs and interest at ten per centum as prescribed by said section.   Having done this, the appellants have lost nothing.

They might have received, if they did not in fact receive, their purchase money, interest and costs ; all the delinquent taxes due the state have been paid, and neither the state nor the purchasers at the tax sale have any cause to complain.

Before closing this opinion, it is proper to notice more particularly the argument of the learned counsel questioning the jurisdiction of the court, which he earnestly relied upon in his able petition printed with the record.   He insists that a court of equity had no jurisdiction, because the plaintiffs had full and adequate remedy at law in an action of ejectment.

His contention is that the appellants were in possession of the land through their tenant, Leftwich, and that being in possession the remedy of the plaintiffs was by action of ejectment.   But the pleadings and the facts proved in the

record do not sustain this position. The answer of the appellants admits that they leased to Leftwich a portion (twenty-five acres), "with the privilege to him of taking possession of and occupying as much as he could cultivate and might desire, which they are advised was an act of possession of the whole tract." This statement shows that the possession of the appellants was only that which they had through their tenant, and that it was really the occupancy of the twenty-five acres with claim to the whole. This is absolutely confirmed by the depositions filed with the cause. And it being further established that their tenant, Leftwich, was ousted of his possession by a judgment of the county court of Bedford county, and that he afterwards, as appears by the record, after he had been so ousted, attorned to the appellees as their tenant, it is very clear that the appellants, at the time the bill was filed, were not in possession of any part of the land.

We deem it only necessary to refer to the opinion of Judge Burks in the case of Carroll v. Brown, 28 Gratt. 791, and the numerous authorities cited by him to show that in such a case as is made by the pleadings and facts in this case, a court of equity has undoubted jurisdiction.

Upon the whole case the court is of opinion that the decree of the court below annulling and setting aside the deed to the defendants, which, for reasons above stated, conveyed to them no title whatever, was plainly right and must be affirmed.

Decree affirmed.