Allen, J.
Upon the trial of this cause the lessors of the plaintiff offered as evidence a deed purporting to have been executed by Michael Erskine, deputy of William Haynes, sheriff of Monroe county, conveying a tract of land returned delinquent for the nonpayment of taxes. The deed recites, that whereas agreeable to an act of the general assembly, passed the 9th of February 1814, entitled an act to amend and explain *423 the act entitled an act concerning taxes on land, the said Michael Erskine, sheriff as aforesaid, after having given notice, by advertisement on the court-house door of the said county, for two months, did commence on the 15th day of August 1815, (being the first day of the August court for said county,)' to expose to public sale the lands theretofore returned delinquent for the nonpayment of the taxes due thereon in the county of Monroe aforesaid. Whereupon the said John Eennel and Hillary Mosely became the purchasers of eight hundred and fifty-one acres, part of one thousand acres, lying in said county, which formerly belonged to and was returned delinquent in the name of E. Wethered, for .the amount of the taxes, damages and costs due on the land returned as aforesaid. How this indenture witnesseth, that the said Michael Erskine, deputy sheriff as aforesaid, for and in consideration of the sum of six dollars and five cents, and in pursuance of said act of assembly, hath sold unto the said John Fennel and Hillary Mosely, &c. &c.
The deed was duly acknowledged and recorded on the 30th of August 1815. To the introduction and reading of this deed as evidence, the defendants objected and the court sustained the objection, and refused to permit the same to be read to the jury.
The plaintiff then, with the object of removing the objections to the deed which appeared on the face thereof, offered to prove by a witness that the sale of delinquent lands recited in said deed to have been made on the first day of the August county court held for said county in the year 1815, had been advertised at the front door of the court-house for said county at the May, June and July terms 1815 of the County court, and also for the space of two months, according to law, in a newspaper then published in the city of Eichmond. To the introduction of this evidence the *424 defendants also objected ; and tbe court excluded the testimony : And the first bill of exceptions taken by plaintiff at the trial brings up for review the cor-rec^ness 0f these two decisions. They must be considered in the order in which the questions arose and were decided ; for if the deed should have been permitted to be read in evidence, without any proof of the regularity of the advertisements, there would have been no necessity for the plaintiff to introduce the proof of such regularity which he offered to do, and the second question would not have been raised.
The bill of exceptions does not purport to set out all the testimony; and it does not appear in what stage of the trial or proof the plaintiff offered to introduce the deed from the sheriff to show title in himself. Before he could have availed himself of the deed for such purpose, he must have exhibited proof that the sheriff and deputy sheriff were such officers as in the deed they were recited to be; and that the person in whose name the land was returned delinquent, his heir, devisee, or other person claiming by, through or under him, had title to the land ; for such title alone was given to the purchaser by the sheriff’s sale and conveyance. Such proof may have been offered, or its production dispensed with ; or the deed may have been first tendered with the understanding that such proof would be offered provided the deed was not rejected on other grounds. The bill of exceptions shows that the deed, when first offered, was rejected for objections appearing on the face thereof, and also what the objections were. The deed did not show that the sale had been advertised according to law. The court, proceeding upon the ground, either that it should appear by the recital in the deed, that the sale was regularly advertised, or that it did appear by the recitals that the sale had not been regularly advertised, *425 held the deed to be void as a deed made under the statute; and being void, it could not be aided by parol proof that the sale had been regularly advertised.
The propriety of this decision depends upon the provisions of the act of February 9th, 1814, 2 Rev. Code 542; and more especially upon the construction to be given to that portion of the act embraced within the sections extending from the 24th to the 38th sections inclusive.
Some of the provisions of this act, particularly the important provisions contained in the 38th section, intended for the protection of the purchaser of lands sold for taxes, have to some extent been adopted in the subsequent act of April 1st, 1831, concerning lands returned delinquent for nonpayment of taxes, Sess. Acts 90, § 7; the act of March 10th, 1832, concerning delinquent and forfeited lands, and providing for the sale of lands returned delinquent thereafter for the nonpayment of taxes, Sess. Acts, 65, § 22; Code 204, ch. 37, § 22, the general law providing for sales of land for taxes. By virtue of these laws and other acts intended to carry out the policy of the two first recited acts, the great mass of delinquent lands in the country west of the Alleghany mountains, has been disposed of. The lands have passed into the hands of purchasers and actual occupants under junior patents;, have been placed in a condition for settlement and improvement, and again become a subject of productive revenue; and under the general law for the salea of land for taxes, titles have been acquired through all parts of the state, the validity of which may in a great measure depend upon the construction of the law under consideration.
When the act of February 9th, 1814, was enacted, the legislature was fully aware of the construction which had uniformly been put on laws of this description. New principles of law were more firmly settled, *426 and from their influence on the transactions of others, more widely known than that where the validity of a deed depends upon an act in pais, the party claiming mi¿¡er p jg b01inc[ t0 pr0ve the performance of the act; that in the case of a naked power not coupled with an interest, the law requires that every prerequisite to the exercise of such power should precede it; that the claimant under a sale made to enforce a forfeiture, must show that the law has been strictly complied with; that the recitals in a deed of an officer selling for taxes, were not even prima facie evidence of the regularity of his proceedings; and that these facts must be proved by evidence aliunde. Yancey v. Hopkins, 1 Munf. 419; Christy v. Minor, 4 Munf. 431; Nalle v. Fenwick, 4 Rand. 585; Steed v. Course, 4 Cranch R. 402; Parker v. Rule's lessee, 9 Cranch R. 64; Williams v. Peyton, 4 Wheat. R. 77; Allen v. Smith, 1 Leigh 231; Ronkendorf v. Taylor, 4 Peters’ R. 349.
As the various directions contained in laws for the sale of lands for taxes were frequently disregarded by the officers charged with the duty of making such sales; and whether complied with or not by the officers, purchasers had but seldom preserved the evidence of such compliance, even if considering the number of such sales, it would have been practicable for each purchaser to procure and preserve that evidence, it followed that but few titles claimed under such sales were sustained by the courts. Confidence in such titles was greatly impaired, and almost destroyed ; and though in the language of the preamble to an act entitled an act more effectually to provide for the payment of taxes upon lands within this commonwealth, passed January 29th, 1803, it is declared to be “ a principle in well organized governments, that property should be holden subservient to the purposes thereof,” it was manifest that unless some assu *427 ranee could be held out to purchasers at sales for taxes that a good title could be acquired, the commonwealth would continue to meet with embarrassment for the want of an adequate mode for the subjection of lands to the payment of taxes. Such being the law and public sentiment, the legislature, by an act passed February 6th, 1809, 2 Rev. Code of 1819, 531, provided for the sale of all lands theretofore forfeited or thereafter to be forfeited to the commonwealth for nonpayment of taxes; but before the time for sale had arrived, a law passed extending the period for redemption ; and by successive laws such period was extended up to the passage of the act of February 9th, 1814; under which the sale of the land in controversy in this suit was made. An examination of this act found in 2 Rev. Code of 1819, p. 542, shows that it was passed with reference to the rules of law and the state of public opinion before adverted to. It was necessary on the one hand to protect the owner who had paid his taxes; and on the other, to give to those who were invited to purchase lands sold by the officer of the law, something like a reasonable assurance of acquiring a good title; something to justify him in paying taxes thereafter and in improving the land. Both objects were carefully regarded by the legislature. Minute directions to the officers are prescribed, forms are furnished for the list of the land tax to be made out by the commissioner of the revenue; the certificate of the clerk verifying its correctness; the return of the delinquent list by the sheriff, and the form of his advertisement of sale; and penalties are imposed on the officers for a failure to perform their respective duties. By the 36th section the former owner of the land was allowed one year after the sale to redeem by the payment of the original purchase money, the costs and charges of executing the deed, together with fifty per cent, per annum interest thereon, and the taxes *428 which may have been charged to the purchaser after ^e sa^e- Or he might under the 38th section institute before the expiration of the time for re¿empf¿011) £0 show that the taxes were not in arrear, or that the proceedings were not regular, although such arrearage or irregularity did not appear on the face of the proceedings.
Having thus prescribed the duties of the different officers, and made such provision for the benefit of the party in whose name the land was returned delinquent, as seemed just, the interest and security of the purchaser was next to be attended to. The 28th section directs the sheriff, on behalf of the commonwealth, to execute a deed to the purchaser at such sale, reciting the circumstances thereof, and setting forth particularly and truly, the amount of the purchase money. The 36th section ascertains his indemnity in case of redemption within the time limited; the 37th provides that the sales made and titles vested in the literary fund, shall give only such estate and such right as, at the time the land was returned delinquent, was vested in the person in whose name it was returned, his heir, devisee or other person claiming under him : And the • 38th section declares that after the time for redemption, thereby allowed, had elapsed, the regularity of the proceedings under which the purchaser at the sale, or the literary fund, claims title, shall not be questioned, nor shall the arrearage of the taxes, for the nonpayment of which such sale was made or such title was vested, be denied, so as to affect such sale or title, unless such irregularity, or the fact that such arrearage did not exist, appear on the face of the proceedings, or be made to appear by proceedings in court, duly commenced before the expiration of the time for redemption and duly prosecuted to a judgment or decree.
The substantial provisions of this section have been incorporated into the subsequent acts before referred to *429 and the Code; and it becomes therefore a question of general interest to determine what change, if any, these provisions, together with the provision contained in the 8th section of the act of February 6th, 1809, 2 Rev. Code, 582, have made in the condition of the purchaser of land sold for the nonpayment of taxes. That section of the act of 1809 declared that it should be the duty of -the collector of taxes to make and execute to the purchaser a deed in fee simple for the lands purchased, reciting the cause of sale j and in every action or suit at law or in equity, in which the former owner, &c. &c. shall contest the validity of the sale so made, the onus probandi shall lie on the party so contesting.
Some cases arising under the act of February 9 th, 1814, have been decided by this court, which must be adverted to. In Rockbold v. Barnes, 3 Rand. 473, lands had been sold by the deputy sheriff, who made a deed to the purchaser, reciting that he was deputy of his principal. The court decided that in such case it was indispensably necessary to prove that the one was sheriff and the other deputy; and that without proof of those facts, the deed was not sufficient evidence that the title of the party in whose name the land was returned delinquent, had vested in the purchaser. Wilson v. Bell, 7 Leigh 22, is referred to as having decided that although under the act of the 9th February 1814 the sheriff or any of his deputies may sell, yet that whichever officer makes sale, that officer alone is competent to convey the land to the purchaser. Chapman v. Bennett, 2 Leigh 329. In this case there were three bills of exceptions. The first related to a matter having no bearing on the question now under consideration.
The second bill of exceptions set forth in substance that the defendant claimed under a sale made by the sheriff under the act of 1814, for taxes in arrear, and *430 showed the return of the land as delinquent, and Proved the sale made by the sheriff; and without any proof that the particular provisions of the act of February 9th, 1814 preparatory to such sales bad been complied with, prayed for an instruction that the title of the person in whose name the land was returned delinquent was divested by the act of February 9th, 1814, and the sheriff’s sale.
By the third bill of exceptions, it appeared that the land was sold and a conveyance made by the deputy sheriff; but the court would not permit the deed to be read in evidence to the jury, on the ground that the deputy sheriff was not authorized by law to make such conveyance.
The counsel for the appellant made no objections to the decisions of the court on the points stated in the first and second bills of exception. No counsel appeared for the appellee. Judge Green, as to the two first bills of exceptions, remarked that the opinions of the court below stated therein, were unquestionably correct; and then proceeded to show that the rejection of the deed upon the ground stated in the third bill of exceptions, was erroneous. For that error, the other judges concurring with Green, the judgment was reversed.
It is observable that no reference seems to have been made in argument or by the court in any of these cases, to the provisions contained in the 8th section of the act of February 6th, 1809, or to the 38th section of the act of February 9th, 1814. The cases did not present any question calling for the consideration of these sections, but from some remarks of Judges Carr and Tucker in the case of Wilson v. Bell, it may be inferred that these sections were not adverted to, or were supposed not to have produced any change in the construction of the law. Judge Carr observed that sales and purchases founded on forfeitures, deserve no *431 indulgence from the court. And Judge Tucker says these laws of forfeiture should be strictly construed, and there should be' no leaning in favor of a transaction by which a tract of thirty acres of land is sacrificed to a purchaser for forty-eight cents.
The case of Rockbold v. Barnes merely decides that there must be proof that the person who professes to sell and convey as sheriff, was sheriff: As the validity of the act done depends upon the official character of the agent, that character must be proved; and his own recital in the deed is not evidence of the fact.
In Wilson v. Bell the court decided that where the deed recited that the sale was made by the sheriff, but the deed was made and acknowledged by the deputy as his the deputy’s own act, it was ineffectual to convey title. Both Carr and Tucker, judges, rely on the fact that he acknowledged the deed, not as the act of the sheriff, but as the act of the deputy himself.
In Chapman v. Bennett the second bill of exceptions did not show that any deed had been made by the sheriff. In fact, as appeared by the third bill of exceptions, the deed actually made had been excluded on the ground that it had been executed by a deputy sheriff The defendant, unable to rest upon his deed as evidence of title, relied upon the return of the land as delinquent, and parol proof of a sale by the sheriff to him: And then asked the court to instruct the jury that by these acts, and the operation of the act of 1814, the former owner’s title was divested. It could only be divested by vesting elsewhere. The sheriff’s deed was necessary to vest it in the purchaser; and the court below may properly have refused the instruction asked for. The judgment, however, in the appellate court was reversed on a different ground. By that reversal the deed was to be let in as evidence; but it -would have been premature to have pronounced any opinion as to the effect thereof as the case then stood.
*432 Another case, that of Keezee v. Leece, arising under statute, was decided at Lewisburg, but not re-either because the case had not been argued, or wag <7ecicie¿ py a majority of a bare court; or for some other reason not now remembered. In that case it appeared that the sale was made by a deputy, but the deed was executed by the sheriff himself; and the objection was made to the deeds being read in evidence until it was proved that all the proceedings prior to the said deed relating both to the delinquency for taxes and the sale and conveyances were regular and pursuant to law. The objections to the deed and to its being read in evidence without this further proof, were overruled; and this court affirmed the judgment. The case differed from Wilson v. Bell in this, that it did not appear on the face of the deed that the sale was made by a deputy, though it did so appear on the return of sales; and the deed purported to be and was the actual deed of the sheriff. In Wilson v. Bell, the recital showed that the sale was made by the principal; and it was questionable whether it was the deed of either the sheriff or his deputy; for the principal did not execute it; and though it purported to be the deed of the principal, it was signed and acknowledged by the deputy, not as the act of the sheriff, but as the act of the deputy himself. The other proposition in effect decided in Keezee v. Leece was that the deed appearing to have been executed by a duly qualified officer, authorized to sell for taxes and convey, was itself prima facie evidence of the transfer of such title as was vested in the person, in whose name the land was returned delinquent, liable to be impeached by proof of irregularity appearing on the face of the proceedings, according to the 38th section of the act of February 9th, 1S14. As the case, however, was for some reason directed not to be reported, it cannot be relied on as a binding authority, and is referred to as showing that the questions arising upon *433 the construction of the acts aforesaid are still open and unsettled: and the attention of a full court has after argument, been directly called to the consideration of the operation of these laws upon the previous doctrines of the courts ; and especially to the effect of the 8th section of the act of 1809, and the 38th section of the act of 1814. The 8th section of the first act makes it the duty of the collector selling lands for taxes, to make and execute to the purchaser, a deed in fee simple, reciting the cause of sale; and provides that in every suit at law or in equity where the former owner contests the validity of such sale, the onus probando shall lie on the party so contesting. This provision reversed the rule established and so long enforced by the repeated decisions of this and other courts. Instead of throwing on the claimant the burthen of showing that every prerequisite to the sale had been complied with, it made the' deed itself prima facie evidence of such compliance, and sufficient to pass the title of the former owner, until it was successfully impeached by proof of irregularity coming from the contesting party.
By an act passed February 5th, 1810, 2 Rev. Code, p. 533, § 13, the deeds to be made' by virtue of the 8th section of the act of February 6th, 1809, were directed to be made by the commissioners- appointed by the last act; and further time to redeem was allowed. The act of January 23d, 1812, declared that the taxes due or to become due, should be and remain a lien on the lands; gave further time to redeem ; and by the 18th section directed that the sheriff and the agent of the literary fund should make deeds to the purchasers: And the subsequent acts extended the time for redemption of lands returned delinquent, until the passage of the act of February 9th, 1814. That act was a compilation of previous acts, with certain changes and alterations; and by the 52d section *434 repealed all acts and parts of acts coming within its purview. It is, in the view I take of the 38th section of this act, unnecessary to determine whether the 8th section of the act of February 6th, 1809, came within the purview of the act of 1814 ; and was repealed, or not. The 38th section of the act of 1814 embraced all that was covered by the previous act, and more. The law contemplated the execution of a deed to the purchaser before the expiration of the year after the sale allowed for redemption: For the 36th section required the owner redeeming, to. refund to the purchaser the costs and charges of executing and recording the deed. The 37th section defined the title to be vested in the purchaser and literary fund, under the proceedings before referred to, including the deed which the 28th section had directed the sheriff to execute; and then the 38th section provided that after the time for redemption allowed by the act had expired, the regularity of the proceedings under which the purchaser at the sale claims title shall not be questioned, &c. unless the irregularity, &c. appear on the face of the proceedings, or be made to appear by proceedings commenced before the time of redemp- . tion had expired. The deed was part of the proceedings, that part which vested the title in the purchaser at the sale; and as its regularity could not be questioned except in the mode designated by the law, it furnished prima facie evidence of title when accompanied with proof of the official character of the sheriff, and of title in the party, &c. in whose name the land was returned delinquent. The 38th section of this act not only embraced the provisions of the 8th section of the act of 1809, but did more. The act of 1809 merely threw the onus probandi on the party contesting, to show irregularity; but did not restrict the party as to the kind of irregularity or the modé of proving it. The 38th section of the act of *435 1814, restricted the party to irregularities appearing on the face of the proceedings ; not even permitting the contesting party to look beyond the and prove by evidence aliunde, though that might be the sheriff’s receipt for the taxes, that the taxes had been regularly paid; for it is expressly provided that after the expiration of the time for redemption, the arrearage of taxes for the nonpayment of which the land was sold should not be denied.
If the 8th section of the act of 1809 was not embraced by these provisions of the act of 1814, then it did not come within the purview of the latter act ; and being in pari materia, and not inconsistent with any portion thereof, it continued in full force. But as the latter act, in my view, contains substantially the same provision, the question ceases to be of much interest. Being part of a system originating in 1809 and carried out more fully in subsequent acts, one may reflect light on the other, and serve to remove any doubt as to the legislative intent in provisions of the more recent laws. That intent was to obviate the difficulties which had followed from the application of the principles of law and construction before referred to in cases of this, description. So far as it respects sales under this law, it was designed to abrogate the rule which required the claimant to prove that all the prerequisites of the law had been complied with. TTis deed furnished prima facie evidence of title when made by the officer of the law. Upon this he could rest unless its irregularity was shown by the contesting party; and after the time limited it could be questioned for such irregularities only as appeared on the face of the proceedings.
If the burthen of showing irregularity lies on the party contesting the validity of the deed, and the time for redemption having expired, such irregularity must appear on the face of the proceedings, the question is *436 presented, whether such irregularity appears on the face of the deed. No other part of the proceedings under which the purchaser claimed title is set forth in the bill of exceptions. The 8th section of the act of February 6th, 1809, directs the collector to make a deed in fee simple to the purchaser, reciting the came of sale. By the 28th section of the act of February 9th, 1814, the sheriff is directed to make a deed to the purchaser at such sale, reciting the circumstances thereof, and setting forth particularly and truly, the amount of the purchase money. By the provision in the first act the cause of sale was to be recited in the deed. The cause of sale was the nonpayment of taxes for which it was returned delinquent. The last act was more specific, and required the circumstances of the sale, and the amount of the purchase money to be recited. By the circumstances of the sale, I do not understand that the deed is to recite all the steps to be taken by -the various officers which preceded the sale, but the circumstances attending the sale itself: That is to say, that the sale was made at the time and place prescribed for the sale of lands returned as delinquent; that the subject of sale was land so returned as delinquent ; if less than the whole lot or tract was sold, how much was sold, who was the purchaser, and the amount of the purchase money: The latter provision being for the benefit of the former owner who was allowed a year after the sale to redeem upon paying the purchase money. These are- the circumstances attending the sale; they show the cause of it; and the deed need contain no other recitals. If more were required, it would be difficult to say where should be the limit. If the deed must recite how the sale was advertised, it must recite it was advertised at the times specified at the court-house, and the city of Richmond, as both are required; and the omission of either would be fatal. As the law prescribes the form of the adver *437 tisement, and a mere naked power should he strictly pursued, it would be necessary to proceed a step further, and the deed should recite not only that it was advertised, but advertised the time, and at the places, and in the form prescribed. And what reason would there be for stopping at the advertisement ? It is no more a circumstance attending the actual sale than the sheriff’s return that the land is delinquent. He is to set forth distinctly in his return, that he could find no property in his bailiwick; the form of the return is given, showing the name of the person in whose name it was charged, a description of the land, amount of tax, and why returned delinquent. This was to be verified by an affidavit; and the sheriff is made liable to heavy damages to the injured party if he makes an untrue return. This return is a much more important fact in the circumstances leading to and preceding the sale than the advertisement: And must it be recited? And so we may revert to the duties required of the commissioner of the revenue, and of the clerk of the County court, all of which should have been regularly performed before the sale. If the deed is to show by recitals a strict compliance with the law, all these matters should be detailed at length. Such an amplitude of recitation could never have been intended in requiring the deed to recite the circumstances of the sale, and set forth the amount of purchase money. It seems to me that the validity of the deed does not depend upon its containing a recital that the land was advertised; or if it recites generally that it was advertised, the failure to set forth the mode in which it was so advertised should not vitiate it.
Nor do I conceive that such deed could be questioned by parol proof of a failure to advertise the sale as the law prescribes. It is unnecessary to determine in this case what are the proceedings referred to in the 38th section of the act of 1814, upon the face of which *438 the irregularity must appear. Suppose the sheriff’s return of his delinquent list, or the clerk’s certificate, the assessment of the commissioner of the revenue, or yie shieriff’s statement of sales, separately or all' combined, to constitute these proceedings; the term on proceedings on the face of which certain matters are supposed to appear, cannot be applied to mere acts in pais. Of this nature is the advertisement of sale. The law does not require any return to be made showing that the sale wras advertised, or any record to be made of the fact. The posting and publishing the advertisement are facts to be proved by evidence aliunde; the face of the proceedings can disclose nothing in relation to them. To recite in the deed that the land was duly advertised. could amount to nothing. The reeitals would be no evidence of the facts recited against a stranger contesting the deed. Wiley v. Givens, 6 Gratt. 277, and cases there cited. If the claimant be required to produce proof to show the recitals are true, then the deed would not be prima facie evidence of title; and the burthen of proving its irregularity would not be cast on the contesting party, as provided by the acts of 1809 and 1814: And if the contesting party be permitted to controvert the truth of the recitals, he must do so by parol proof, by facts not appearing on the -face of the proceedings. For the law not requiring any return of the advertisement, or record to -be made of it, or of the evidence that it was advertised, it is a matter to be proved or disproved by evidence aliunde: And no matter to be made to appear by such evidence, can be received to question the regularity of the proceedings.
To require proof of the advertising after the time for redemption had expired,1 would destroy most of the titles claimed under such sales; and subject the claimants to the evils which this law was intended to remedy. It contemplated a disposition of the immense *439 mass of delinquent lands which in the western part of the state had been accumulating almost from the revolution. The difficulty of preserving the evidence of such acts in pais had impaired all confidence in such titles; and as numerous sales would be made in every county, it would be difficult, if not impracticable, for each purchaser to preserve evidence of an advertisement posted at the court-house, of which perhaps no copy was ever made. If proceedings were instituted to set aside the sale within the period allowed for redemption, the proof might be produced ; but if the owner permitted the time to elapse, the door was not only closed upon such evidence, but he was not even permitted to deny that the taxes were in arrear for which the land was sold, so as to question the purchaser’s title; whatever might have been his remedy against the officer who made the false return.
Other provisions of the act of February 9th, 1814, tend to confirm the construction placed upon it in regard to advertisements and other acts to be proved by parol evidence. The 30th section provides, that if at the sale no person shall agree to give for any tract of .land so exposed to sale, the amount of taxes and damages in arrear, the title of such tract shall thereupon be vested in the president and directors of the literary fund, in the same manner as if they had been purchasers at the sale, and as if the sheriff had executed to the literary fund a deed therefor. The 38th section, as we have seen, declares that the regularity of the proceedings under which the purchaser at the sale or the literary fund claims title shall not be questioned. The lands thus acquired by the literary fund as purchasers at the price of the taxes and damages in arrear, formed a class by themselves; and though subsequent laws permitted the former owner to redeem, they ceased to be a subject of taxation, and were not included in the class of delinquent lands. The act of *440 1831 before referred to, keeps up the distinction; and by the provisions of that and other acts, the title thus vested in the literary fund was transferred to the actual occupant claiming under a junior patent, if there was such occupant, or the land was to be sold by the commissioner in the mode prescribed. If it were held that the individual purchaser at a sale for taxes, must show either by the recitals of his deed or by proof almnde, that the sale was duly advertised, the same rule would apply to lands acquired by the literary fund. They were purchased at the same sale; the title vests by the same proceedings with the exception of a deed, which is not required where the literary fund becomes by operation of law the purchaser. The 38th section extends to both the same protection. Yet it cannot be supposed that the legislature contemplated that the literary fund should seek and preserve parol evidence of transactions in pais ; or that the literary fund or those claiming under it by transfer or purchase, should be required to look elsewhere than in the office to which the proceedings were returned to be preserved or recorded, for the evidence of the regularity of the proceedings by which the title of the former owner had been transferred : Conforming in this with the whole system of law respecting real estate, by which every purchaser is enabled by a diligent examination of the records, to ascertain with reasonable certainty, the condition of the title.
If no recital in regard to the advertisement was necessary, the recital so far as it goes was surplusage ; and the omission to recite that it was duly advertised did not affect the deed. The recital that it was advertised at the court-house for two .months, may well stand with the fact that it was advertised at the May, June and July courts and in some public newspaper in Richmond. The face of the deed is no evidence to the contrary; and if not, then no evidence of irregu *441 larity appeared on the face of the proceedings. The proof which the plaintiff offered to show that the sale had been regularly advertised, was unnecessary. I think the deed was improperly excluded from the jury upon the ground of any objection appearing on the face thereof. The deed, if proved to have been executed by a duly qualified sheriff, should have been permitted to go to the jury as prima facie evidence of such title, as according to the 37th section of the act of February 9th, 1814, it purported to vest in the purchaser at such sale, liable to be questioned according to the 38th section of said act for any irregularity appearing on the face of the proceedings.
On the second bill of exceptions, I think the deed should have been admitted to go in evidence to the jury, for the purpose therein mentionedthough it might have been ineffectual to pass title. It was competent to show, by the deed and other evidence, an actual entry under a claim of title, and a continued holding thereunder, so as to make out a title or right of entry by actual possession. Shanks v. Lancaster, 5 Gratt. 110. Possession so taken and continued for the time prescribed, might ripen into a right of possession, and so bar the defendant’s, right of entry. For these reasons I think the judgment was erroneous, and should be reversed.
Moncure, Lee and Samuels, Js. concurred in the opinion of Allen, J.
Daniel, J.
was of opinion that the deed was defective as a statutory deed, for irregularities apparent on its face ; and that it was not competent to introduce the evidence offered to cure- those irregularities : And therefore that the first bill of exceptions showed no ground of error. But he was also of opinion, that the deed was proper evidence for the purpose of showing* *442 together with the other evidence, an entry and hold-™g under claim of title : And therefore that the court erred in refusing permission to the plaintiff to in¿rtMJHCe ft for ¡jach purpose.
The judgment of the court was as follows :
It seems to the court here, that the fact that a sale of delinquent lands was duly advertised in the mode prescribed by the 24th section of the act of February 9th, 1814, 2 Rev. Code, of 1819, p. 548, was not one of the circumstances of such sale, which by the 28th section of said -act was to be recited and set forth in the deed executed by the sheriff to the purchaser at such sale; that such deed is not vitiated by the failure to recite that a sale was advertised, or if it recites generally that the sale was advertised, by the failure to set forth particularly the mode in which it was so advertised; that after the time for redemption allowed by the 36th section of said act shall have elapsed, it would not be competent by parol testimony, to impeach such deed for such failure; the advertisement being a mere act in pais, and no part of the proceedings in regard to sales under said act, of which any return or record was required to be made. It seems to the court therefore that the recital contained in the deed set forth in the bill of exceptions, was surplusage; and so far as it goes, is not inconsistent with the fact that the sale was also advertised in the mode and at the times and places prescribed by the act. And if both facts might be true, then no such irregularity appears on the face of the proceedings for which the title acquired by the purchaser at such sale, could be questioned according to the provisions of the 38th section of said act.
It further seems to the court, that although it would have been incumbent on the plaintiff claiming title under such deed, before he could have availed himself thereof for such purpose, to have shown in some stage *443 of the trial that the sheriff and deputy sheriff were such officers as the deed recited, and that the person in whose name the same was returned delinquent, his heir, devisee or other person claiming by, through or under him, had title; yet it does not appear from the bill of exceptions that such testimony had not been offered previously, or had not been waived; and if not, the decision of the court complained of in said bill of exceptions, precluded the introduction thereof, if in the power of the plaintiff to produce such proof. It appears from the bill of exceptions taken altogether, that the court rejected said deed for the supposed irregularity on its face; for the bill of exceptions sets forth that after such rejection the plaintiff then, with the object of removing the objections to the deed which appeared on the face thereof, offered to prove by a witness that the sale had been regularly advertised; which evidence the court refused to permit to be given; showing thereby, that the only questions decided by the court, and which were intended by the bill of exceptions to be presented for revision, were whether said deed was void for irregularity appearing on its face; and if not, whether the irregularity could be cured by proof. And the court considering said deed as void for such supposed irregularity, rejected said deed and all parol proof in aid of it. Regarding the decision of the said Circuit court as going to the validity of the deed for the supposed irregularity which appeared on the face thereof, it seems to the court here, that said Circuit court erred in rejecting the same for the cause aforesaid; and that said deed, if proved to have been executed by a duly qualified sheriff, should have been permitted to go to the jury as prima facie evidence, of such title as, according to the 37th section of said act, it purported to vest in the purchaser at such sale, liable to be impeached according to the 38th section of *444 said act for any irregularity appearing on the face of the proceedings.
It further seems to the court here, that said Circuit court erred in the decisions set forth in the second bill of exceptions. The said deed, even if invalid as a conveyance of title, was in connection with other evidence, proper evidence to show an entry under a claim of title, and a continued holding thereunder, so as to make out a title or right of entry by actual possession.
It is therefore considered that said judgment be reversed, that the verdict be set aside, and a new trial awarded, in which said deed, if again offered in Connection with evidence showing that said William Haynes was sheriff and said M. Erskine was deputy, as in said deed is recited, is not to be rejected as invalid for the alleged irregularity appearing' on the face thereof. And also with instructions that if said deed should be rejected for any other cause as invalid as a conveyance of the title which it purports to convey, it would still be proper evidence in connection with other proof tending to show an entry and holding under a claim title, so as to make out a title or right of entry under the statute of limitations.