LAWRENCE *et al.*, *v.* DuBois *et al.*

Decided April 10, 1880.

1. Though a deed be absolute on its face, the real nature of the transaction can be proven by parol evidence or surrounding circumstances, and the deed be held to be a mortgage.

2. The following circumstances have great weight in determining that a deed absolute on its face is a mortgage: First, Where the parties admit that the grantor owes after the execution of the deed the consideration of the land to the grantee as a debt. Second, If this alleged consideration is grossly inadequate. Third, If the vendor remains in possession of the land for many years without the payment of any rent.

3. A suit by the grantor in a deed absolute on its face, to have it declared and held to be a mortgage, may be brought in the county where the grantee resides, though the land lie in another county.

4. A deed absolute on its face, if shown to have been originally a mortgage by parol proof and the surrounding circumstances, may be declared a mortgage, though the land has passed into the hands of a grantee who paid no consideration for the land, or into the hands of a purchaser for valuable consideration who had notice of the character of the original transaction.

5. In a suit, where a husband and wife are defendants, the evidence of the husband cannot be received for the wife.

6. The declarations of an agent, made while he is performing the act authorized by the principal, which qualify and characterize the act, are admissible in evidence against the principal as a part of the *res gestæ.*

Appeal from and *supersedeas* to a judgment of the circuit court of the county of Kanawha, rendered on the

12th day of December, 1876, in a cause in chancery in said court then pending, wherein Merriman M. Lawrence and others were plaintiffs and Henry A. DuBois and others were defendants, allowed upon the petition of Merriman M. Lawrence and Charles K. Lawrence.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case :

In July, 1873, Merrimen M. Lawrence filed his bill in the circuit court of Kanawha county against Henry A. DuBois, Delafield DuBois and Alice G. DuBois, his wife. In this bill he states, that one Harrison Adkins held a title-bond for a certain tract of land in Boone county, West Virginia, executed to him by one Thomas Payne, and in 1853 said Adkins transferred this bond to the plaintiff, M. M. Lawrence, whereby he became the equitable owner of this tract of land, and he shortly after transferred this title-bond to Henry A. DuBois, one of the defendants, for the express purpose of securing to him the payment of $50.00 which he owed him, and as a further security for the payment of this $50.00 the plaintiff, M. M. Lawrence, directed Thomas Payne to execute a deed for said tract of land to said DuBois, it being understood and agreed between them that upon the payment to him of the $50.00 and the interest thereon the said DuBois would convey the land to a trustee for the benefit of the plaintiff's, M. M. Lawrence's children. And thereupon Payne and wife did execute a deed conveying this tract of land to H. A. DuBois absolutely. A copy of this deed is filed with the bill, dated April 9, 1853, and was recorded on October 1, 1853. It recites the title-bonds aforesaid and the transfers of them as above stated. The bill alleges, that the plaintiff, M. M. Lawrence, was, when this deed was made, in the possession of this tract of land and continued in

possession of it nineteen years afterwards, that is, till 1880
Special Term.
Lawrence *et al.*
v.
DuBois *et al.* 1872, and paid the taxes on it during all that time. And he filed with the bill the clerk's receipt for the redemption of the land, which had been sold for taxes for the years 1855, 1856 and 1857, and also the sheriff's receipt for the taxes on this tract, which contained three hundred acres and lay on Short creek, for the year 1869. The amount paid to the clerk was $1.50 and' to the sheriff $2.10. The land was again sold for the non-payment of taxes of 1868, and redeemed by the plaintiff, M. M. Lawrence; and he files with his bill the sheriff's receipt for the money to redeem this land amounting to $3.77. The bill alleges, that the $50.00 and the interest thereon due from the plaintiff to H. A. DuBois had been fully paid; and he files with the bill a receipt for the payment of $20 on this debt, as the plaintiff alleges, signed by the defendant, Delafield DuBois, who, the bill alleges, was the agent of his uncle Henry A. DuBois.

The receipt is in these words:

"Sept. 25th, 1870.

"Rec'd of Merriman Lawrence the sum of twenty dollars on account, to be applied to debt due on land on Short creek.

$20.00.            DELAFIELD DuBOIS."

This bill also states, that Henry A. DuBois, in 1872, unjustly by suit ejected the plaintiff, M. M. Lawrence, from this tract of land, and afterwards, on May 27, 1872, he and his wife conveyed with special warranty of title this tract of land to Alice Goddard DuBois, the wife of Delafield DuBois, and to her husband. This deed was recorded October 2, 1872, and a certified copy of it is filed with the bill, which shows the conveyance to be to said Delafield DuBois and his wife. But since the cause has been on appeal in this Court, the original of this deed has been produced, from which it appears that a mistake was made in recording it, the word "heirs" by mistake being copied "husband;" and the deed is in fact to Alice Goddard DuBois, the wife of Delafield Du-

Bois, and her heirs ; and by consent of parties this is to be regarded as the real deed and as if it had been filed in the court below. The consideration recited in the deed is one dollar ; but the bill alleges that it was a voluntary deed. The prayer of this bill is, that this deed may be set aside, and a deed be decreed to be made conveying this tract of land to a trustee for the use and benefit of the children of the plaintiff, M. M. Lawrence, and for general relief.

On November 11, 1873, this bill was demurred to specially, and among other grounds of demurrer it was claimed, that the children of the plaintiff were, on the facts stated in the bill, entitled to sue, and the plaintiff having no interest in the land had no right to file this bill ; and the court gave leave to the plaintiff to file an amended bill making additional parties. This amended bill was filed October, 1874. It alleges that the contract or understanding between M. M. Lawrence and Henry A. DuBois with reference to this tract of land being a security for this $50.00 was in writing, but has been lost, it having been held by one Houston Estill, an agent of DuBois at that time, but who had died some nine years before the filing of this amended bill ; and it further alleges that both Delafield DuBois and Alice G. DuBois, when said deed to them was made, knew the terms of this contract or agreement. This amended bill makes the children of M. M Lawrence, that is, James K. Lawrence and Ann S. Lawrence, infants, by their next friend, William D. Pate, and John W. Lawrence and William R. Lawrence, adults, additional parties plaintiff, reiterates the statements of the original bill, and concludes with a similar prayer.

The defendants moved the court to strike out such portions of this amended bill as made these new parties, and also filed a demurrer to this amended bill, in which it is claimed among other things, that as the bill and amended bill show on their face that the land in

controversy lay in Boone county, the circuit court of Kanawha county had no jurisdiction in this cause.

Subsequently Henry A. DuBois filed his answer to this bill and amended bill. In this answer he says he purchased this tract of land for a valuable consideration from Thomas Payne and wife in 1853, under these circumstances : that the plaintiff, M. M. Lawrence came to him and told him he was about to be ejected from this land by his creditors, he being much embarrassed, and offered to sell it for $50.00, which he, DuBois, at first declined, but was persuaded to accept the offer, and he paid the $50.00 cash and got a deed from Payne and wife in fee simple for the land, and permitted M. M. Lawrence to occupy it as his tenant at will. He denies positively that this sale was either a mortgage or a conditional sale, but was, he says, an absolute sale in fee simple. He denies that Houston Estill was his agent in the purchase of this land, though he was hired by him as a book-keeper and to do other duties from time to time as he might direct. He denies that any written or other contract ever existed between him and said Lawrence, or that said Estill ever held such a contract. He says that with perhaps one or two exceptions he paid the taxes on this land from and after 1853 till he conveyed it to his neice in law, and that these taxes and interest on them amounted to about $250.00. He files with his answer the sheriff's receipt for the taxes of 1868, amounting to $9.94, the recorder's receipt of $3.90 for redemption of this land sold in 1871 for non-payment of taxes, and bought by plaintiff, M. M. Lawrence, and alleges that any payments of taxes which were made by the plaintiff, M. M. Lawrence, were made in his own wrong, and whenever the land was sold for taxes, it was an improper sale, he always having paid the taxes. He admits the payment of the $20.00 to his nephew, Delafield DuBois, who was then his agent; but it was made, he says, on a large debt due from said M. M. Lawrence to him for the rent of this land and timber cut

from it. He alleges that he owed his nephew, Delafield DuBois, a large sum for professional services as his lawyer, and sold him this land in satisfaction thereof, and at his instance conveyed it to his wife. He claims to have had possession of this land, before he sold it, for nineteen years, and pleads the statute of limitations to the plaintiff's action. He claims that M. M. Lawrence was during all this time his tenant at will, and that he owes him $475.00 of rent, that is nineteen years' rent, the land being worth $25.00 a year; and with the interest thereon his present indebtedness is some $740.00; and asks that his answer may be regarded as a cross-bill, and this $740.00 should be decreed to be paid by said M. M. Lawrence.

Delafield DuBois and Alice G., his wife, also filed their joint answers, denying the plaintiffs' claim and asserting, that if he ever had any equity in this land, they had no notice thereof. They say that the consideration of the deed made by Henry A. DuBois was for said professional services, board of the said Henry A. DuBois for a long time and natural affection. They assert that the $20.00 was paid on account of rent of this land; and they deny that he ever paid any taxes on the land; and they reassert the statement of Henry A. DuBois in his answer.

These answers as well as the amended bill are sworn to.

The adult children of M. M. Lawrence filed their affidavits, that their attorney on the record was never authorized to prosecute this suit in their name, and they asked a rule on him, to show cause why the suit should not be dismissed as to them. He filed his affidavit that he was employed by M. M. Lawrence to prosecute this suit and protect his interest and that of his children. This rule was never acted upon by the court, and it is presumed it was abandoned by those at whose instance it was issued, as the same attorney subsequently filed pleadings on behalf of those at whose instance the rule

was issued. A similar affidavit of one of the infants is copied by the clerk in the record; but it constitutes no part of the record.

The plaintiffs filed a special replication to the answers of the defendants. In this replication they deny, that there ever was any contract, oral or in writing, justifying Henry A. DuBois in demanding of M. M. Lawrence rent for this land, reiterate that he held it as owner or mortgagor, assert that Henry A. DuBois never did demand any rent for this land, and no such demand was made till after the conveyance of the land in 1873, when for the first time Delafield DuBois set up such a pretence. All the statements in the bill and amended bill are reiterated. It is denied that Henry A. DuBois ever paid about $250.00 taxes on this land, or any taxes except the $9.94 for which he produces a receipt. They reiterate the statement that the deed from Henry A. DuBois to Alice G. DuBois was voluntary, and that they, the grantees, had full knowledge of the plaintiffs' equity in said land, when said deed was made; and they rely on a letter filed with the deposition of Henry A. DuBois, and sent by Delafield DuBois to M. M. Lawrence, to show that Henry A. DuBois did not claim this land as his absolutely. The letter was written in 1871, and its contents will be presently stated.

In April, 1876, a second amended bill was filed. It reiterates the statements contained in the former bills and in said special replication, alleges that the tract of land was worth in 1853 $1,000.00 and is now worth $1,500.00, that there was no other consideration for the deed made to Henry A. DuBois for this tract of land except this loan of $50.00, that he never paid said Payne anything, but on the contrary said M. M. Lawrence had before that paid him in full for said tract of land, and they allege that Delafield DuBois and his wife had full knowledge of the contents of the letter aforesaid, written in 1871, by Henry A. DuBois and sent by Delafield DuBois, and which letter admits the right of said M. M.

Lawrence to redeem said land on the payment of the balance due on said $50.00 and the interest thereon which will not exceed $100.00; and they ask to be allowed to redeem said tract of land by paying the balance which may be due on this $50.00 loan, and for general relief, and that this prayer for relief may be substituted for the prayer for relief in the original and former amended bill.

The answer of all the defendants to this amended bill reiterates the statements in their former answers. They deny that this tract of land was worth $1,000.00 in 1853, that in their opinion it was not then worth more than $50.00. That was all Henry A. DuBois was then willing to pay for it, and he was not anxious to purchase it at that price, and that $50.00 was the price at which M. M. Lawrence had purchased this tract of land shortly before, and was also the price at which Payne had sold it; and they allege that Wm. D. Pate had no authority to appear in the suit as next friend of James K. Lawrence and Anna S. Lawrence. And they allege that since the deed was made to her, Alice G. DuBois has paid the taxes on this land. The defendants moved to strike from the second amended bill all the plaintiffs except M. M. Lawrence, and demurred also thereto for reasons stated in their former demurrers.

Replications were filed to all the answers and general rejoinders thereto.

A number of depositions were taken. They prove that the value of the land in controversy was probably in 1853 from $400.00 to $500.00. The defendants' witnesses value it at about $300.00, and the plaintiffs' at $900.00, and as $25.00 a year is claimed as rent by the defendants in their answers sworn to by each of them, I think that the tract of land in 1853 cannot be regarded as worth less than from $400.00 to $500.00, when it is considered that its value must have been large compared with its rental value, as only about ten acres of this tract of land was cleared, and the only house on it cost probably only about $50.00. This clear-

ing and house was built by M. M. Lawrence who occupied the land from 1853 to 1871. The house was burned down during the war, and a house of about the same value built on the land after the war. He also planted on this tract of land an orchard, consisting of about one hundred and fifty peach and apple trees. These were all the improvements on the place. Since the deed for this land was made to Alice G. DuBois, a kitchen has been added to the house worth about $25.00.

Henry A. DuBois, who lives in New Haven, Connecticut, was examined by the defendants as a witness on interrogatories, but was not cross-examined. He states, that in 1853 he was the president of the Virginia Cannel Coal Company at Peytona, in Boone county, West Virginia, and left there between the 1st and 4th days of October, 1853 ; that Houston Estill was employed by him specially as book-keeper of the company, while he was there, and he dismissed him when he left there ; that, just before he left there, he purchased this tract of land directly of Merriman M. Lawrence on September 30, 1853, and the purchase-money was paid in cash in the presence of Houston Estill, whom he commissioned to obtain from Thomas Payne after his departure, which was to take place in a few days, a deed direct to him, and to have it recorded, which was done. This is the only private business he ever commissioned Estill to do for him. Neither at the time of the purchase, nor before nor after, was he bound, he says, by any contract verbal or written to reconvey the premises, or any part of them, to Lawrence or his children ; but, he says, he frequently urged him to purchase back the premises, offering to reconvey them to him or his children, on his repayment to him of the cost and interest, which he invariably declined to do. He never heard that it was pretended, till after this suit was brought, that Estill as his agent had made a contract verbal or written to convey said land to Merriman M. Lawrence's children, or to any one else, upon the payment of the $50.00 or any

other sum; and he never did authorize him to make any such arrangement. He says that Lawrence never has paid him or any one else for him, so far as he knew, one single cent of the principal or interest of the purchase-money. He understood from his agent, Delafield Du-Bois, that on one occasion Lawrence paid him $20.00, but on what account it was paid he could not say. It was applied to the taxes of that year, $19.50, and none of it came into his hands. The following letter was sent to his agent, Delafield DuBois, to be delivered by him to Merriman Lawrence. The plaintiffs' amended bill number two admits the receipt of this letter by the hands of Delafield DuBois. It is as follows:

"NEW HAVEN, March 24, 1871.

"MR. MERRIMAN LAWRENCE:

"Sir—It is now nearly twenty years since I bought from you the land on Short creek. During all that time you had an opportunity of purchasing this land back by simply paying me what I had paid, with interest and taxes, and you have been repeatedly asked to do so, but have refused, and have squatted on the land, despoiled it of the timber, paid me nothing and left me to pay the taxes. I have refrained from taking any harsh steps out of regard to the children of your first wife. I will now offer you one more final opportunity. Pay me what I am out of pocket and I will give you a deed in trust for the benefit of your children, or else pay in advance as rent the interest of what I am out of pocket, together with the annual taxes, and you may remain on the land during good behavior, and when your oldest son becomes of age, I will renew to him the same proposition which I now make to you. If you fail to comply with either of these propositions I will authorize my agent to eject you from the land. My object is that your children shall not suffer on your account if I can prevent it, and all I ask from you is to pay me back what I paid you,

with interest and taxes, without charging you for the use of the land or the timber that you have taken off.

"HENRY A. DuBois.

"P. S.—Sent a copy of this to Del'd DuBois, my agent."

He says, that from 1853 M. M. Lawrence occupied this land by his sufferance. He cared but little for the land, and expected he would repurchase it. He abandoned the land about the time of the war, and after several years returned and squatted on the land without his permission or knowledge. The consideration for which he conveyed this land to Alice G. DuBois was the liquidation of a large claim for legal services on the part of her husband, and from love and affection for her family, his near kinsfolk, and particularly for the tender care with which she nursed him during a long and dangerous sickness at her house.

The witness is evidently mistaken as to the time when he was seen by M. M. Lawrence about buying this land or loaning him this $50.00, as the deed from Payne to him is dated April 9, 1853, about six months instead of a few days before he left Peytona, and it was acknowledged on September 17, 1853, some two weeks before he left there. The receipt too for the $20.00, which was paid by M. M. Lawrence to his agent, Delafield DuBois, was produced, and the signature of DuBois to it proven, and on its face it was to be applied to a debt due on this tract of land, language which is entirely unintelligible, if Henry A. DuBois's statement of the transaction is correct, for it admits that M. M. Lawrence owed a debt on this tract of land, and seems to necessitate the inference, that when this debt was paid, he would be entitled to the land. This receipt consists much better with the statements of the person who wrote the deed from Payne and wife to Henry A. DuBois, of date April 9, 1853, and who subsequently took the acknowledgement of it as one of the justices of the peace, who certified the acknowledgement. He says that this deed was written

by him at Peytona, in Brooke county, where Henry A.
DuBois then resided ; that he was absent and Houston
Estill acted as his agent in the transaction, and stated
that M. M. Lawrence owed Henry A. DuBois $50.00,
and this deed was to be given as security for it, and Mer-
riman M. Lawrence directed Thomas Payne, who was
present, to make the deed directly to Henry A. DuBois ;
that the deed was so made, and then there was a separate
contract written by this witness and signed by Estill,
the witness thinks it was signed by him as agent for
DuBois, and he does not reollect whether Lawrence
signed, which contract was, that when Lawrence paid
DuBois the $50.00, he was to transfer the land to Law-
rence's children.    This portion of the evidence was ex-
cepted to as secondary evidence introduced without first
proving the loss of this contract.

The deposition of Delafield DuBois was taken on be-
half of his wife, but excepted to, because of his incompe-
tency as a witness.    As he was not a competent witness,
it is unnecessary to state his evidence.

The deposition of Alice G. DuBois was also taken.
She proves that when the deed was made to her by her
husband's uncle, Henry A. DuBois, she knew nothing
of any claim to this tract of land set up by M. M. Law-
rence or his children, and that she has paid the taxes on
the land since the deed was made to her, and that Henry
A. DuBois was at one time sick for a long time at their
house.    It was also proved, that at one time Henry A.
DuBois redeemed this land, once when it was sold for
the non-payment of taxes, but the amount paid, or when,
is not proven, the receipt being lost.

On December 12, 1876, the circuit court of Kanawha
county rendered this decree :

" This 12th day of December, 1876, this cause came on
again to be heard upon the bills, answers, exhibits, depo-
sitions, decrees, orders, replications and proceedings here-
tofore heard and filed in the cause, and was argued by
counsel.    Whereupon the court is of opinion that the

plaintiffs are not entitled to any relief in this cause; it is, therefore, adjudged, ordered and decreed that the plaintiffs' bills be and the same are hereby dismissed, with costs to the defendants, including an attorney's fee, or allowance to the defendants of $30.00, and this cause be dismissed from the docket."

From this decree an appeal and *supersedeas* was awarded by this Court on the petition of M. M. Lawrence and James K. Lawrence.

*Thomas L. Brown*, for appellants, cited the following authorities:

12 W. Va. 247; 1 Tucker Com. Book 2, §§ 100, 102, 109, 110; 7 Cranch 237; 2 Rob. (old) Pr. 51, 52; Bispham Eq. 201; Story Eq. Juris, § 1529; 1 Munf. 373; 7 W. Va. 713; 10 W. Va. 250; 2 Tuck. Com. Book 3, § 445; 11 W. Va. 122; Code 594; Acts 1872–3, 586; 1 Ves. Sr. 444; Lead. Cas. Eq. (W. & T.) 681; Wythe (Va.) 135; 1 H. & M. 4; 5 Munf. 401; 20 Gratt. 687; 21 Gratt. 532.

*A. Burlew*, for appellees, relied upon the following authorities:

Acts 1872–3, ch. 110; Acts 1873, ch. 197; 8 N. Y. 256; 5 Ohio St. 194; 1 Johns. Chy. 883; 55 N. Y. 657; 8 W. Va. 406; *Berne* v. *Childs*, 10 Pet.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first question presented by the pleadings in this cause is: Had the circuit court jurisdiction of this cause, the tract of land, which is the subject of controversy, lying in Boone county? The defendants, Delafield DuBois and Alice G. DuBois his wife, who had the legal title to this land, resided in Kanawha county, and it therefore had jurisdiction to hear and determine such a cause. See Acts of 1872-3 chapter one hundred and seven, section one. This suit might have been brought

Syllabus 3.

in Kanawha county, even though the land had not been in this State, the residence of the defendants, whose deed is sought to be set aside, giving the court jurisdiction, no matter where the land lay. See *Penn* v. *Lord Baltimore,* 1 Ves. Sr. 444; *Farley* v. *Shippen,* Wythe (Va.) 143; *Guerrant* v. *Fowler & Harris,* 1 H. & M. 4; *Hughes* v. *Hull,* 5 Munf. 431; *Cranstown* v. *Johnston,* 3 Ves. Jr. 170; 25 Ves. Jr. 277. The distinction established by these cases is, that when the decree or judgment is to affect the lands directly, as in an action of ejectment or a suit in this State to divide a tract of land in another State, the court has no jurisdiction, except where the land lies. But if the decree is to affect the person of the defendant, the court where the defendant resides has jurisdiction, no matter where the land lies. For in one case the court could not enforce its judgment or decree, but in the other it could be completely enforced, even if the land lay in a foreign jurisdiction. In this case though Henry A. DuBois lives in Connecticut, yet the defendant Alice G. DuBois, lives in Kanawha county, and she holds the legal title to this land, Henry A. DuBois having now no title to this tract of land legal or equitable, and the court therefore can have no difficulty in enforcing its decree, and therefore properly took jurisdiction of the cause.

The next inquiry is: Did the court err in permitting the plaintiff, M. M. Lawrence, against the protest of the defendants to amend his original bill and make his children co-plaintiffs with him? The appellees' counsel insists, that the original bill of M. M. Lawrence showed on its face that he had no interest whatever in this tract of land, and that if it was not owned absolutely by the defendants, the children of the plaintiff, and they only, would claim an interest in it, and therefore this court ought not to have permitted the plaintiff to amend his bill and make these children co-plaintiffs with him. This however is an obvious error, the original bill expressly states that the plaintiff, M. M. Lawrence, was to remain in the possession and enjoyment of this land, till he

paid the $50.00 advanced to him and interest, and then it 1880
Special Term.
Lawrence et al.
v.
DuBois et al. was to be conveyed to his children, it not being stated that this agreement was in writing. It is true this original bill alleged that this $50.00 was fully paid, but it does not therefore follow that he could have no interest in this tract of land. His children might not choose to accept the conveyance of the land, and there are in the record affidavits of some of them saying they claimed no interest in this tract of land; and this arrangement between M. M. Lawrence and Henry A. DuBois by the statements in the original bill being a mere verbal understanding could confer on the children of Lawrence no rights. A mere verbal promise to give land, when unaccompanied by any possession, can confer no rights on the parties. Even if this arrangement had been evidenced by writing, as the amended bill states it was, still M. M. Lawrence was properly a party plaintiff, and being so, it was proper in the court to permit the original bill to be amended and to make his children, who had not then before been parties to the suit at all, parties plaintiff with him. The amended bill shows that M. M. Lawrence has not paid the whole of this $50.00 and interest, and that being so, he has obviously an interest in the controversy, being, if his case is proven, a right to the possession of the land or the rents and profits of it, till this controversy is ended.

I have not in the statement of the case referred to the facts stated in the deposition of Delafield DuBois. The written admission of the parties show, that the deed of this tract of land made by Henry A. DuBois was made to the wife of Delafield DuBois, and he was unquestionably incompetent at common law to testify in her behalf, and our statute, so far from making him a competent witness, but emphasizes the common law exclusion of him. The fifth section of chapter one hundred and thirty of our Code, page six hundred and twenty, provides : 'A husband shall not be examined for or against his wife, except in an action or suit between husband

and wife." As his wife is directly interested in the question of what, if any, is the amount of the indebtedness of M. M. Lawrence to Henry A. DuBois, he cannot testify on this subject, and is therefore incompetent to prove what sum has been paid by M. M. Lawrence to Henry A. DuBois, or what taxes have been paid by Henry A. DuBois on this tract of land, or what improvements have been put upon this land by his wife. See *Hill* v. *Proctor*, 10 W. Va. 59 ; *Rose & Co.* v. *Brown et ux.*, 11 W. Va. 122. The New York authorities, referred to by the appellees' counsel to show that a husband may be a witness on behalf of his wife, are entirely inapplicable, as they hold that this is so only by virtue of their statute law, which is materially different from our statute law. The fifth section above quoted is not, and never has been, a part of the New York statutes, and it was inserted expressly to prevent the interpretation being put on our laws which by these New York decisions had been put upon their statute law.

The circuit court never acted upon the rules issued at the instance of John W. Lawrence and William R. Lawrence against their counsel on the record, to show cause why the suit should not be dismissed, though their affidavits were filed to support this rule, and therefore on this appeal there is no action of the court to review. With reference to this rule it is reasonable to infer, that it was abandoned by these parties, especially as long subsequent to the issuing of the rule a special replication was filed for them by the same counsel. The affidavit of James K. Lawrence to a similar effect copied into the record is no part of it, the record showing no motion of this character by him, and as he is one of the appellants, the inference is he is actively seeking to enforce his rights. If any of these parties desire, they can, as far as their interest extends, severally dismiss the cause as to themselves. If they disclaim any interest in it, then, as their interest in the tract of land was a mere gift from

their father, such disclaimer would restore to him the interest of such of them as disclaim.

1880
Special Term.

Lawrence *et al*
v.
DuBois *et al.*

We will now consider the case upon its real merits, as shown by the pleadings and proof. The question is, whether the transaction with reference to this tract of land, entered into in 1853 between M. M. Lawrence and Henry A. DuBois, was an absolute sale, a conditional sale, or a mortgage. The deed of Payne and wife to Henry A. DuBois, dated April 9, 1853, by which this transaction was consummated, was an absolute conveyance on its face. But it is perfectly well settled almost everywhere, and especially in Virginia and West Virginia, that such an absolute sale may be converted into a conditional sale or a mortgage by proving that the real intention of the parties was that it should not be an absolute sale, and that such Syllabus 1. intention may be proven by the surrounding circumstances and by parol proof. It is unnecessary to cite authorities to establish this position, which is, so far as I know, almost universally admitted ; but the cases of *Klinch* v. *Price*, 4 W. Va. 4, and *Davis, committee* v. *Demming et al.*, 12 W. Va. 246, establish this to be the law in this State.

The appellees counsel refer to *Miller et ux.* v. *Stokley et al.*, 5 Ohio St. 194; *Boyd* v. *McClean*, 1 Johns. Ch. 582 ; *De Witt C. Van Tuyl et al.* v. *The Westchester Fire Insurance Co.*, 55 N. Y. 657; *The Western Mining and Manufacturing Co.* v. *Peytona C. C. Co.*, 8 W. Va. 406, to prove that in such a case it is essential that the parol evidence should be so certain and conclusive, as to exclude every rational hypothesis to the contrary with the certainty of a positive written declaration of a trust, before it can control an absolute conveyance. But the rule, even in reference to the weight of the parol evidence necessary to establish an express trust in a case, where the deed is absolute on its face, has never been laid down thus strongly, except where there has been a long continued possession in opposition to the alleged express trust. And when this circumstance is absent, it has been only

laid down that the express trust must be shown by parol proof affirmatively, and so conclusively as to remove all reasonable and well founded doubt. The cases too, in which the rule is laid even thus strongly, as will be seen by reference to the above authorities cited by the appellees' counsel and *Troll et al.* v. *Carter*, 15 W. Va. 567, are cases in which an express trust is sought to be set up in opposition to a deed absolute on its face, or cases of resulting trust, where land is bought in the name of one party and with his money and the deed is taken in the name of another, or it is attempted to control a written contract by proving by parol proof that a mistake was made in writing the contract.

It is however obvious, that rules laid down in these cases can have but little influence with a court, in deciding whether a deed absolute on its face was intended by the parties as a conditional sale or mortgage. In all such cases the circumstances, which surround the case, very frequently have a powerful, nay almost controlling, influence in determining the question, and the direct parol evidence may be quite weak, and yet the court may hold the absolute deed as a conditional sale or a mortgage, because these surrounding circumstances are strong to show, that such was the real character of the transaction. Some of these strong circumstances, leading the court to hold that a deed absolute on its face is nevertheless a conditional sale or mortgage, are pointed out in *Davis* v. *Demming et al.*, 12 W. Va. 282. If the price is grossly inadequate, it raises a strong presumption, that the transaction was a mortgage, and not an absolute sale. The fact, that by the papers executed no right of redemption exists, is a matter of no importance, if it is shown satisfactorily by proof or by the surrounding circumstances, that a security or pledge for a debt was intended; for a party is never allowed to take from his debtor by any form of contract his right to redeem. See *Chapman* v. *Turner*, 1 Call 280; *Thompson* v. *Davenport*, 1 Wash. 128; *Pennington* v. *Handy et al.*, 4 Munf. 190; *Scott* v. *Brit-*

Syllabus 2.

*ton*, 2 Yerg. 215; *King* v. *Newman*, 2 Munf. 40; *Holdridge* v. *Gillespie*, 2 Johns. Chy. 30 ; *Clarke* v. *Cowen*, 2 Cowen 325 ; *Horn* v. *Keteltas*, 46 N. Y. 605 ; *Davis* v. *Demming et al.*, 12 W. Va. 282.

In the case before us this circumstance is very strong. The property conveyed was worth some $400.00 or $500.00 at least; and its annual rent according to the answers of the defendants sworn to by them was $25.00 a year Yet it is admitted, that the entire price paid for this property was $50.00. Another strong circumstance is, that the vendor remains in the possession of the property long after the alleged sale and payment therefor. Such a continued possession for a long time after the sale, if not inconsistent with an absolute sale, is a very unusal accompaniment of it. See *Ross* v. *Norvell*, 1 Wash. 40 ; *Thompson* v. *Davenport*, 1 Wash. 125; *Bennet* v. *Holt*, 2 Yerg. 6 ; *Davis* v. *Demming et al.*, 12 W. Va. 282.

This circumstance in the case before us is exceedingly strong. It is admitted that the vendor remained in the possession of the land claimed to have been sold by him and paid for in full by the vendee, for the long period of at least fifteen years, and not only paid not one cent of rent therefor, but that he built on it successively two small dwelling-houses, cleared some ten acres of ground and planted an orchard of one hundred and fifty trees. Nor is there any proof that during this long period of time any rent was demanded of him. I have said it was admitted that he had paid no rent during all this time, but after the lapse of all this time it is alleged in the answers of the defendant that he then paid $20.00 of rent. But that this is not true is distinctly proven by the production of the receipt for this $20.00. which on its face shows that it was not paid for rent. The fact that the grantee of this land paid a portion of the taxes on this land does not rebut this strong presumption that this was not an absolute sale, for if it had been a conditional sale or a mortgage, it would have been necessary for him to pay these taxes and thus prevent the sale of it for the

non-payment of the taxes, as, if sold, he would have lost the benefit of his mortgage.

Another very strong circumstance, to show that a deed absolute on its face is in reality a mortgage, is that, after the deed has been executed, the grantor still remains the debtor of the grantee for the consideration on which the absolute deed has been given. If this be clearly established, it is very strong evidence that what purports to be an absolute deed is but a mortgage, whether the consideration be an antecedent debt or cash paid with a written or verbal engagement on the part of the grantor to repay the same. See *Stephen* v. *Cushman et al.*. 35 Ill. 187; *Hamet* v. *Dundas*, 4 Barr (Penn. St.) 181; *Morris* v. *Nixon's ex'r*, 1 How. (U. S.) 119; *Hickox* v. *Lowe et al.*, 10 Cal. 197; *Farmer* v. *Grose*, 42 Cal. 169. In the case before the court was there, after the execution of the deed, a recognized obligation on the part of M. M. Lawrence to repay to Henry A. DuBois the $50.00 he had paid to him, when the deed was executed? And did DuBois, after the execution of this deed, claim that this $50.00 was a debt due from M. M. Lawrence to him? If so, according to the authorities it is a very strong, if not conclusive evidence that the deed for the tract of land, though absolute on its face, was really a mortgage to secure the payment of this $50.00 and interest.

On September 25, 1870, M. M. Lawrence paid to Delafield DuBois, the admitted agent of Henry A. DuBois, $20.00, and Delafield DuBois executed to him a receipt therefor, which on its face expresses on what account it was paid. There never had been any transactions between the parties other than this transaction about this tract of land located on Short creek in Boone county. The language of the receipt was, that this $20.00 was "to be applied to debt due on land on Short creek." It would seem impossible to construe this language otherwise than as referring to this $50.00 and interest thereon. There was no other debt between the parties, which could have been said to be due on the land on Short

creek.   And this debt being recognized as still payable,
and as a *debt* after the execution of the deed, it is accord-
ing to the authorities at the least very strong evidence
that this deed was a mortgage to secure this debt.   If
the deed was intended by the parties as an absolute
deed, then M. M. Lawrence could not owe this $50.00
and interest to DuBois; for if the deed was an absolute
conveyance and intended as such, the payment of the
$50.00 to Lawrence by DuBois could not have consti-
tuted him the creditor of Lawrence.   And the fact, that
Lawrence admitted himself to owe this $50.00 and in-
terest as he did by making this payment of $20.00 on it,
and the fact that DuBois claimed that Lawrence owed
him this sum, seem to be entirely inexplicable, except on
the assumption that this deed was regarded as a mortgage
on the land to secure this debt, and not as an absolute
deed:   If this was the real understanding of this trans-
action, then the language of this receipt becomes plain.
This $20.00 was to be applied to the debt on this land,
that is, the debt secured on this land.

These numerous and strong presumptions in favor of not
regarding this deed as an absolute deed are in my judgment
much strengthened by the parol evidence bearing di-
rectly on the nature of this transaction at the time it
transpired.   Henry A. DuBois proves, that Houston
Estill was his agent to obtain this deed, and also that he
was cognizant of the contract between Henry A. DuBois
and M. M. Lawrence, for he states that it was made in
his presence.   Now what this agent said while in the
very act of executing this agency by procuring this deed
for his principal, which indicated what the parties con-
sidered the true and real character of the deed, would
seem clearly to be evidence as a part of the *res gestœ*.

See *Hawker* v. *B. R. & O. R. Co.*, 15 W. Va. 637; *Corder*
v. *Talbott*, 14 W. Va. 277; *Hanover Railroad Co.* v. *Coyle*,
55 Pa. St. 402.   If these declarations had been made after
the transaction had been completed, they would not have
been evidence.   See *Va. & Tenn. R. R. Co.* v. *Sayers*,

20 Gratt. 351 and *Griffin* v. *Montgomery R. R. Co.*, 26 Ga. 111. The magistrate who wrote this deed testifies, that when it was being executed, Houston Estill, the acknowledged agent of DuBois, said that M. M. Lawrence owed Henry A. DuBois $50.00, and that this deed was to secure it ; and Lawrence being present assented to this and directed Payne to execute this deed. This it seems to me, was obviously a part of the *res gestæ* and was clearly admissible evidence. And as this agent was present, when the contract was made between DuBois, his principal, and Lawrence, it would seem to be conclusive of the character of this deed, which, though absolute on its face, was declared at the time it was executed to be only a security for this $50.00. I do not rely on the further testimony of this magistrate, that this understanding was reduced to writing and signed by Estill, if not by Lawrence also, as the contents of this paper could not properly be proven, unless its loss had first been proven, which was not done.

Against this distinct evidence, that this deed was originally intended by the parties as a mortgage to secure this debt, Henry A. DuBois says positively that it was an absolute deed, and that it was not intended to secure this $50.00, which, he says, Lawrence did not owe to him, as it had been paid to him in cash for the purchase absolutely of this tract of land. But his recollection of the transaction appears by the record to be very unreliable. He undertakes to fix the exact time of this transaction, as he thinks, on September 30, 1853 ; and he fixed it by knowing when he left Peytona finally, which he says was a day or two afterwards. But the date of the deed shows, that he is in this much mistaken ; the deed is dated April 9, 1853, nearly six months before he left Peytona ; and instead of this deed having been procured for him by his agent, Estill, after he left here finally, it appears to have been executed in his office at Peytona long before he left, though he was not in the office at the time. It was acknowledged for recordation before he

left, and it is highly probable that he saw it before he left for his home in Connecticut. That his memory is very unreliable is further shown by his testifying, that the taxes on this land for one year were $19.50, and by his stating on oath in his answer, that the taxes and interest on this tract of land amounted to about $250.00, which he had paid. While the sheriff's and clerk's receipts for taxes filed for several years show, that in those years the taxes on this land ranged from $2.10 to $9.94. The amount of taxes paid by him on this tract of land probably did not amount to $100.00.

Henry A. DuBois filed with his deposition a letter he wrote to M. M. Lawrence, March 24, 1871, as showing that his statement of this transaction is correct; but this letter, it seems to me, shows the reverse. It has been copied in the statement of the case. It seems to me to show clearly, that it had always been understood by him that this transaction amounted to but a mortgage, and that M. M. Lawrence had always been acknowledged as having the right to redeem this land on paying the $50.00 and interest. He says that it had been twenty years nearly since he bought this land and adds: "During all that time you had an opportunity of purchasing this land back by simply paying me what I paid with interest and taxes, and you have been repeatedly asked to do so." If he had a right at any time to purchase, as he calls it, this land back on paying the $50.00 and interest, then the transaction in its legal aspect amounted to but a mortgage. It would seem from this letter, that he thought he had a right himself to foreclose this mortgage, and he undertook to do so by ejecting the mortgagor from the premises. This is, I think, the fair deduction from his letter. One cannot read it without being impressed with the belief, that according to the original understanding of the parties M. M. Lawrence had a right to redeem this land, and the complaint is that he had not done so.

I am therefore clearly of the opinion, that the deed executed by Payne and wife at the request of M. M.

1880
Special Term.

Lawrence et al.
v.
DuBois et al.

Syllabus 4.

Lawrence to Henry A. DuBois was, though an absolute deed on its face, but a mortgage to secure the payment of this $50.00 with interest from April 9, 1853.

The appellees' counsel insist that, though it might be regarded as a mortgage as against the grantee, Henry A. DuBois, yet as against Alice G. DuBois it must be, what it purports on its face to be, an absolute deed. This must depend upon whether she occupied the place of a purchaser of the land for valuable consideration without notice. That she paid a valuable consideration for this tract of land is not pretended; and therefore it is perfectly immaterial whether she had notice of the equity of Lawrence or not. But it is claimed her husband, Delafield DuBois, was a purchaser for valuable consideration without notice, and that she is entitled to occupy his position. She is entitled to occupy his position; and if he is a purchaser without notice of this equity for a valuable consideration, then this tract of land is discharged of this equity. He may be a purchaser for valuable consideration, but he was certainly not a purchaser without notice of this equity. He was the general agent of his uncle, Henry A. DuBois, in this State for years, and it would be very improbable that he was ignorant of any facts in relation to the title of this land known to his uncle. That he knew that M. M. Lawrence had a claim on this land, and that, when he paid off the debt secured on it, the land would no longer belong to his uncle, sufficiently appear from his receipt for the $20.00 paid on this debt on the land, that he gave to M. M. Lawrence September 25, 1870. The letter, too, written by his uncle, Henry A. DuBois, to M. M. Lawrence, a copy of which was sent to him, gave him sufficient notice of the equity of M. M. Lawrence and his children in this tract of land to prevent him from being a purchaser of this tract of land without notice of their equity. Yet he had a deed made to his wife for this land more than a year afterwards, and whether he paid a valuable consideration for this land or not is entirely immaterial. She

paid no valuable consideration for this land, and in her hands it is as much subject to this equity, which was valid against her husband, as if the deed had been made to him, and he had made a voluntary conveyance of it to her.

1880
Special Term.
Lawrence *et al.*
v.
DuBois *et al.*

This deed to Henry A. DuBois being then a mortgage, it remains to enquire : What was the extent of the debt secured by it? This debt is the $50.00 and interest from April 9, 1853, the date of the deed, and also all the taxes which have been paid on this tract of land by Henry A. DuBois or Alice G. DuBois, with interest on the same from the time these taxes were paid. The payment of these taxes was necessary to prevent the sale of the land for delinquent taxes, and to preserve this mortgage from destruction ; and therefore this tract of land must stand as a security for the repayment of them and the interest on them. But this debt, for which this tract of land is liable, is subject to a credit of $20.00 as of date September 20, 1870, that being the amount then paid on it by M. M. Lawrence, and also to the amount of the rents and profits of the land since M. M. Lawrence was actually ejected therefrom, whether received by Henry A. DuBois or his assignee, Alice G. DuBois, less the amount of permanent improvements which have been put upon the property by Alice G. DuBois. This debt is payable to Alice G. DuBois as the assignee of Henry A. DuBois.

The decree therefore of the 12th day of December, 1876, of the circuit court of Kanawha county must be set aside, reversed and annulled; and these appellants must recover of the appellees, Henry A. DuBois and Delafield DuBois and Alice G. DuBois, his wife, their costs about their appeal in this Court expended; and this Court, proceeding to render such decree as the court below should have rendered, doth adjudge, order and decree, that the deed executed by Thomas Payne and his wife to Henry A. DuBois, dated April 9, 1853, conveying the tract of land in the bill mentioned, is a mortgage to secure the payment of a debt of $50.00 with interest

from April 9, 1853, originally due from M. M. Lawrence to Henry A. DuBois, and that the said tract of land must also stand as a security for all the taxes which have been paid thereon by either Henry A. DuBois or Alice G. DuBois, with the interest thereon since their payment; but that said debt, composed of this $50.00 and taxes and the interest thereon, should be credited by the $20.00 paid by M. M. Lawrence September 25, 1870, and also by all the rents and profits of said tract of land, since the said M. M. Lawrence was ejected therefrom, less the value of the permanent improvements put upon said tract by Alice G. DuBois. And the court doth further adjudge, order and decree, that the said debt, composed of said $50.00 and the amount of said taxes and said interest subject to said credits, is coming now to Alice G. DuBois, the assignee of Henry A. DuBois, for her sole and separate use, and that the equity of redemption in said tract of land is in John W. Lawrence, William R. Lawrence, James K. Lawrence and Ann S. Lawrence, children of Merriman M. Lawrence; and that this cause is remanded to the circuit court of Kanawha county, with the directions, that it be referred to a commissioner of said court to ascertain the amount of said debt which is a lien on said land, including said taxes and interest, after allowing the credits hereinbefore stated ; and when so ascertained, if the same be not paid in a reasonable time, to be fixed by the court, to Alice G. DuBois for her sole and separate use, then the said tract of land, or so much thereof as shall be necessary, shall be sold under the direction of said court, and said debt so paid ; and if the said debt, when so ascertained, shall be so paid in such reasonable time, then that the said circuit court of Kanawha county shall decree that Delafield DuBois and Alice G. DuBois, his wife, shall execute a deed with special warranty of title for the said tract of land to John W. Lawrence, William R. Lawrence, James K. Lawrence and Ann S. Lawrence; and if any of said parties shall appear in said cause hereafter and disclaim any interest in said tract of land, or

decline to accept said deed, then his or her share in the said tract of land shall be conveyed to Merriman M. Lawrence in his or her stead; and the said circuit court shall further proceed in said cause according to the principles laid down in this opinion, and further according to the principles governing courts of equity.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.