# CHARLESTON

COLUMBIA FINANCE & TRUST CO. v. FIERBAUGH, *et al.*

Submitted January 30, 1906.    Decided April 10, 1906.

1. EQUITY—*Pleading.*

    A pleading in equity is taken to be what it is in substance, regardless of its form, or the name given to it by the pleader.    (p. 337.)

2. ACTION—*Commencement of Suit.*

    A suit in equity is commenced at the time process to answer the plaintiff's bill is issued, although the bill be not then filed. The bill, when filed, relates back to the time the process was issued. (p. 337.)

3. TAXATION—*Tax Sale—Suit to Set Aside—Burden of Proof.*

    Where the validity of a sale of land for delinquent taxes is attacked by proper suit in equity to set the sale aside, before deed to the purchaser is made and recorded, for material irregularities and failures to comply with material provisions of the statutes in relation to the proceedings leading up to and including the sale, and the existence of such irregularities and failures is put in issue between the plaintiff and such purchaser, a defendant, by proper pleadings in the cause, the burden is on such purchaser claiming under the tax sale to show substantial compliance with all the material provisions of the statutes in relation to the proceedings leading up to and including the sale.    (p. 338.)

4. SAME.

    The rule above stated is not changed by the fact that a deed to such purchaser is recorded pending the suit.    (p. 338.)

Appeal from Circuit Court, Putnam County.

Action by the Columbia Finance & Trust Company against Robert S. Fierbaugh and others.    Decree for plaintiffs, and defendant E. W. Wick appeals.

*Affirmed.*

GUNN & ALEXANDER, for appellant.
BOWYER & GREEN, for appellees.

COX, JUDGE:

The Columbia Finance & Trust Company, a corporation, instituted its suit in equity in the circuit court of Putnam county against Sarah Fierbaugh and others, and filed its bill therein at July rules, 1899, for the purpose of foreclosing a

mortgage lien against a certain tract of land in said county, then owned by Sarah Fierbaugh, which lien the Trust Co. claimed as assignee of the Columbia Building, Loan & Savings Association, also a corporation.    The bill filed set up a trust lien against the land, in favor of the administrator of Wm. Collins, deceased, and made such administrator and the trustee in the deed of trust parties defendant.    Such proceedings were had in the suit that on the 29th day of July, 1901, a decree for the sale of the land was entered to satisfy said liens.

In December, 1899, the land was sold by the sheriff of Putnam county for taxes assessed thereon and returned delinquent for the year 1898 in the name of Sarah Fierbaugh.    E. W. Wick became the purchaser at the tax sale for $12.12.    Afterwards, on the 3rd day of August, 1901, the Trust Co. caused process to be issued against the parties defendant to the original bill and E. W. Wick, the purchaser at the tax sale, to answer an amended and supplemental bill to be filed by the Trust Co.    This bill was filed at December rules, 1901.    It alleged the ownership of the land sold for taxes to be in Sarah Fierbaugh, and exhibited her title papers.    It also alleged various irregularities and failures to comply with material provisions of the statutes, in relation to the proceedings whereby the land was sold for taxes, and in relation to the sale, and other proper matters, and asked to set aside the tax sale and deed made pursuant thereto.    Wick, the purchaser at the tax sale, demurred to and answered this bill.    Upon the hearing, the circuit court entered a decree setting aside the tax sale and the deed made pursuant thereto, and carrying into effect the former decree of sale to satisfy the liens against the land. Wick appeals.

The principal controversy in this cause is, whether or not the curative provision of our statute, sec. 25 ch. 31, Code, applies to the irregularities and failures alleged in the bill, under the circumstances here presented.    The solution of this controversy depends upon the time when the deed to the tax purchaser was admitted to record.    The date of the admission of this deed to record is also controverted. The certificate of the clerk of the county court of Putnam county of the admission of this deed to record is dated the 5th day of August, 1901, and certifies that the deed, together with the sheriff's

receipt, acknowledgment, etc., were on that day presented and admitted to record. By an amended answer, appellant alleged that the deed was executed and delivered to him on the 29th of January, 1901, and was on that day delivered to said clerk for record, and that the clerk incorrectly and by mistake certified on the deed that it was presented and recorded on the 5th of August, 1901. To this amended answer, and to the original answer, there were general replications.

The evidence upon the issue made, as to the date when the deed was admitted to record, is conflicting. The certificate made by the clerk, under the sanctity of his official oath, says that the deed was admitted to record on the 5th of August, 1901. Appellant Wick testified that the deed was executed, stamped and directed to be recorded on the 29th day of January, 1901, and that the stamps thereon were cancelled on that day. The evidence of the notary who took the acknowledgment to the deed on the 29th of January, 1901, was taken on behalf of the appellant. He testified that he took the acknowledgment. He was not asked, and he did not say, whether the stamps were placed on the deed and cancelled at the time he took the acknowledgment or not. The evidence of the clerk of the county court, who made the certificate of the admission of this deed to record, was taken on behalf of the appellant. So far as his evidence in any way tends to contradict his official certificate, it must be looked upon with suspicion. This witness testified that he could not remember when the stamps were placed on the deed. His attention was called to the date of his certificate, and he further testified that "the deed had been executed and acknowledged and stamped before the date of the certificate of record, and I had received instructions from Mr. Wick to place it to record, and it was continually in the office from the time of execution until I delivered it to Mr. Wick some time after recording." He did not say whether the deed was ready for record one minute, one hour, one month, or longer, before the date of the certificate. He also testified that this deed was kept with the other unrecorded deeds in his office—meaning by other "unrecorded deeds" those which had been admitted to record but not yet transcribed on the deed book. He did not say that he made any mistake or error in the date of the certificate. We do not consider that the evidence ad-

duced from this witness in any manner contradicted his official certificate.

A number of witnesses testified that they went to the clerk's office on different occasions between the 29th of January, 1901, and the 5th of August, 1901, and searched for this deed, although some of them did not disclose to the clerk the fact that the object of their search was this deed. Some of these witnesses testified that they asked the clerk for the unrecorded deeds in his office; that the unrecorded deeds were delivered to them by the clerk; that the unrecorded deeds were examined by them, and that the deed to Wick was not found among the unrecorded deeds. Some of these witnesses testified that the clerk was asked for this particular deed, and that he said "there was none." It is true there is a conflict between the evidence of the clerk and one of these witnesses as to whether or not this deed was shown to him.

The decree of the lower court in effect defeated the contention of the appellant as to the date of the admission of this deed to record. Under all the facts and circumstances appearing in this record, and under the rule of law applicable, we cannot say that the lower court erred in its determination of this question of fact. This being true, it is unnecessary for us to discuss or decide whether or not the clerk's certificate may be impeached, in a collateral proceeding in equity, for mere error in date of admission to record; because the facts presented do not call for such adjudication.

Considering the 5th day of August, 1901, as the date of the admission of this deed to record, the process to answer the amended and supplemental bill was issued two days previous. The amended and supplemental bill was in effect a new suit, in so far as its purpose was to litigate the validity of the tax sale and deed. A pleading in equity is taken for what it is in substance, regardless of its form, or the name given to it by the pleader. *Sturm* v. *Fleming*, 22 W. Va. 404; *Mayo* v. *Marchie*, 3 Munf. 384; *Kendrick* v. *Whitney*, 28 Grat. 646; *Hill* v. *Bowyer*, 18 Grat. 364; *Laidley* v. *Merrifield.* 7 Leigh 346; *Mettert* v. *Hagan*, 18 Grat. 231; *Sands* v. *Lynham*, 27 Grat. 291. The amended and supplemental bill was not actually filed until after the tax deed had been recorded; but, when filed, the bill related back to the time the process to answer it was issued. The issuance of process to answer

the plaintiff's bill is the commencement of a suit in equity. *Geiser Mfg. Co.* v. *Chewning*, 52 W. Va. 523; *U. S. Blow Pipe Co.* v. *Spencer*, 46 W. Va. 590.

This bill, in addition to alleging the ownership of the land to be in Sarah Fierbaugh, and the irregularities and failures to comply with the provisions of the statutes, made the follow-lowing allegation: "That before the institution of these proceedings to attack said sale and to have same declared null, and before the issuance of the process on this amended bill, the plaintiff caused to be tendered to said E. W. Wick the purchase money paid by him at said pretended sale and purchase for said tract of land, said plaintiff having a right to charge it with the payment of its debt, together with interest allowed by law, and any further taxes he may have paid on the same, which tender and money he refused and refused to abandon his claim as purchaser of said land, or to allow the same to be released from said pretended sale, or to be redeemed in any way therefrom. Said offer or tender has been kept good, and plaintiff now makes the same offer." This allegation was not denied, but admitted, by the answer of appellant. The bill also alleged the admission of the tax deed to record after process was issued to answer the amended and supplemental bill, and other proper matters. The answer of appellant denied the existence of the irregularities and failures to comply with the provisions of the statutes, in relation to the proceedings leading up to and including the sale, to which answer the plaintiff replied generally. Under this state of the pleadings, the burden was on the appellant, claiming under this tax sale, to show substantial compliance with all the material provisions of the statutes in relation to the proceedings leading up to and including the tax sale. 2 Cooley on Taxation, 914-16; Black on Tax Tit. (2d ed.), 443; Blackwell on Tax Tit., § 1125; *Nalle* v. *Fenwick*, 4 Rand 585; *Allen* v. *Smith*, 1 Leigh 231; *Chapman* v. *Bennett*, 2 Leigh 329; *Yancey* v. *Hopkins*, 1 Munf. 419; *Christy* v. *Minor*, 4 Munf. 431; *Jesse* v. *Preston*, 5 Grat. 120; *Flanagan* v. *Grimmet*, 10 Grat. 425; *Dequasie* v. *Harris*, 16 W. Va. 345; *Stead's Exor.* v. *Crouse*, 4 Cranch 403; *Parker* v. *Rule's Lessee*, 9 Cranch 64; *Williams* v. *Peyton's Lessee*, 4 Wheat. 77; *Ronkendorff* v. *Taylor's Lessee*, 4 Pet. 349; *Early* v. *Harmon*, 18 How. 610.

The fact that the tax deed was recorded after the process

was issued does not change the rule as to the burden of proof. The rights of the parties must be determined as of the commencement of the suit. This being an attack upon the tax sale before deed recorded, the curative provision of the statute, sec. 25 ch. 31, Code, cannot apply to the proceedings leading up to and including the tax sale. *Boggess* v. *Scott*, 48 W. Va. 316; *Hays* v. *Heatherly*, 36 W. Va. 613; *Jackson* v. *Kittle*, 34 W. Va. 207.

The irregularities and failures alleged in the amended and supplemental bill are sufficient, at common law, to set aside the tax sale. The mention of a few of such irregularities and failures will serve to illustrate. The bill alleged that the sheriff did not, within ten days after receiving from the Auditor the list of lands to be sold by him for delinquent taxes for the year 1898, make out and cause to be published an abstract of such list, in some weekly newspaper published in said county, once a week for four successive weeks prior to the date of sale; that the sheriff did not at such sale sell the said lands at the front door of the court house of said county, and that no copy of the delinquent list for the year 1898, including said tract of land, was posted at the front door of the court house at least two weeks before the session of the county court at which the sheriff presented his delinquent list for the taxes of 1898. These irregularities and failures are fatal to the tax sale before deed recorded. Notwithstanding the bill pointed out these material irregularities and failures, the appellant contented himself with the simple denial of their existence and of their materiality, when he carried the burden of showing a substantial compliance with all the material provisions of the statutes in relation to the preceedings leading up to and including the sale. The appellant offered no evidence to show compliance with the provisions of the statutes. We must hold, therefore, that he has failed to make out a defense to the plaintiff's amended and supplemental bill.

We have not discussed the demurrer to the amended and supplemental bill separately; because it seems entirely sufficient in law, if treated as a bill attacking the tax sale before deed recorded.

For the reasons stated, the decree of the circuit court is affirmed.

*Affirmed.*