## CHARLESTON

Marshall v. Porter, Ex'r, *et al.*

Submitted January 31, 1911.    Decided November 19, 1912.

1. Mortgages—*Compulsory Release—Suit to Compel.*

    The promissor in non-negotiable notes, secured by a deed of trust on land, and owner of the land, claiming full or partial satisfaction of the notes by payment or application of sets-off by agreement, which the creditor denies, will be entertained in a court of equity for a compulsory release of the deed of trust on proof of full satisfaction of the debt, or for judicial ascertainment of the amount due and redemption thereof on proof of partial satisfaction. (p. 331).

2. Bills and Notes—*Non-negotiable Notes—Equities in Hands of Maker.*

    Equities against non-negotiable promissory notes in the hands of an assignee, acquired, by the promissor, against him, while he held them, are available as discounts or credits against a subsequent assignee. (p. 333).

Appeal from Circuit Court, Hancock County.

Bill by O. S. Marshall against W. D. Porter, executor and others. Decree for defendants, and plaintiff appeals.

*Reversed and Remanded.*

71 W. Va.

*J. B. Sommerville* and *John Marshall,* for appellant.

*E. A. Hart,* for appellees.

POFFENBARGER, JUDGE:

Complainant's bill, praying alternatively for compulsory release of a deed of trust, or, permission to redeem therefrom, in case a balance shall be found due the creditor, was dismissed as not stating a case of equitable cognizance, or not showing ground of relief.

As to jurisdiction in equity there is no doubt. The deed of trust is really a modified form of mortgage and courts of equity have always entertained bills to redeem from mortgages. *Lawrence* v. *DuBois,* 16 W. Va. 443; *Clark* v. *Long,* 4 Rand. 451. If the amount of the debt secured by a deed of trust is uncertain for any reason, there is jurisdiction in equity to determine the amount and status thereof in advance of a sale. It is the duty of the trustee, before sale, to institute a suit to remove the uncertainty as an impediment to the sale, and either the debtor or the creditor may do so. *George, Trustee,* v. *Zinn,* 57 W. Va. 15.

It remains only to say whether the pleadings and proof show any cause for resort to a court of equity. The bill claims entire satisfaction of the debt by payment, and also denies any indebtedness on account of the secured notes. As the evidence shows only cross demands, its admissibility under the allegations of the bill is denied, but we think it is admissible under the general denial of indebtedness. Such denial would be a good plea in an action of debt and the rules of equity pleading are more liberal than those applicable to common law proceedings. *Columbia &c. Co.* v. *Fierbach,* 59 W. Va. 334; *Powell* v. *Parkersburg,* 28 W. Va. 698.

The present holder of the notes is the executor of the will of a deceased assignee thereof, and the sets-off are demands against her assignor, acquired before the assignment. The notes are non-negotiable and the complainant claims the assignor agreed, while he held them, to allow credit thereon for the amount of the cross demands. They were executed April 14, 1886, and made payable to Jasper M. Porter, who, in 1893, assigned them to James M. Porter, complainant's alleged debtor. In 1907, the

latter assigned them to his sister, Fannie Porter McBride, who has since died. Complainant is an attorney at law and was, at one time, after the execution of the notes, clerk of the county court of his county. As such attorney and clerk, as well as commissioner and trustee in divers transactions, he claims to have performed services for James M. Porter on many occasions, on account of which the latter became indebted to him in numerous small sums, which, it is claimed, he agreed to allow as credits on the notes. He swears James M. Porter obtained the notes from Jasper M. Porter, the original holder, to enable him to give credit thereon for the amount of said cross-demands. The largest credit so claimed grew out of a transaction respecting an oil lease. In the year 1889, the complainant purchased an interest in the Tope oil lease, owned by James M. Porter, and under which a productive oil well was drilled. Porter held the title to the lease and managed the business. Some years later, he sold it and all of the fixtures connected with it, but never rendered any account to the complainant. Just what it was worth or what it sold for is not disclosed, but a charge of $600.00 is made against Porter on account of complainant's interest in it.

In the absence of an agreement to give credit on the trust debt for the amounts of these claims, they would have no connection therewith, and would amount to no more than ground for an action at law to recover them, or such of them as are well founded. But the complainant testifies substantially that Porter agreed to allow, as credits on the notes, such sums as might be found due from him. Porter makes no denial of some of the claims, dating back many years, and procured the notes, as complainant says he promised to do, and held them from 1893 until 1907, collecting nothing on account thereof except $150.00, in December, 1895, nor demanding payment. This conduct harmonizes perfectly with the alleged agreement, and is inconsistent with any other theory. The express testimony as to the agreement is very general and indefinite and relates more directly to the oil well interest than anything else, but we think it is aided materially by the circumstances and conduct of the parties. The witness says he wanted a settlement for his interest in the oil well and kept insisting upon it and was put off;

and that finally Porter said "he would lift the note himself" and they "could settle afterward." Again he says he importuned Porter, in 1893, for a settlement as to the oil well interest, saying he wanted to use the money to pay the notes, then held by Jasper M. Porter, and this effort resulted in Porter's promise to "lift the notes" and allow complainant to settle with him. They were evidently procured in that year. Porter makes no denial of this statement, nor, in most instances, of his indebtedness for the items of the account exhibited against him. Some of these are for money actually expended for his benefit. To refuse credit for them at this late day would subject all of them to the bar of the statute of limitations, should it be invoked, and complainant seems clearly to have relied, in his forbearance, upon the agreement set up.

As the notes were not negotiable, they are subject to all proper credits in the hands of assignees. Hence neither the assignment to Mrs. McBride nor her subsequent death bars complainant's right. That the the equity here is against an assignee, not the original creditor, is immaterial. The purchaser of a chose in action abides the case of the person from whom he buys. *Darris* v. *Auston,* 1 Ves. 249; *Thomas* v. *Linn,* 40 W. Va. 122.

Complainant may not be entitled to an allowance of all his claims, since there seem to have been other transactions between the parties in which he may have gotten the benefit of some of them, and possibly some of them may never have been well founded. The trial court, deeming none of them allowable, seems not to have inquired as to the merits of each separate and distinct demand. As the inquiry and settlement will involve numerous inquiries of fact and extensive calculations, the cause seems to be one proper for reference to a commissioner, but that lies within the discretion of the trial court.

As it may be necessary to order a sale of the property, the trustee should be made a party by amendment.

For the reasons stated, the decree will be reversed and the cause remanded for further and full inquiry as to the amount of the complainant's indebtedness on account of the notes in

question, if any, and for final disposition in accordance with the rules and principles of equity.

*Reversed and Remanded.*